## Lead Driver (Trainer) Compensation and Qualifications

To qualify as a Lead Driver, you must be approved by both Operations and Safety. In general, this means that you would need to have a minimum of 6 months of OTR experience. This must include four months of winter driving in the last twelve months, to include driving OTR between the months of November and March. You also need the approval of our Operations and Safety Departments. Once approved, you would attend a brief Lead Driver Class where we would teach you how to train a student with a new CDL.

| Length of Completed Service | LEAD DRIVER RATE, when training a student (Pay is based on Split Miles) | LEAD DRIVER RATE Running as a Solo by choice, when Students are available. (Pay is based on All Miles) | LEAD DRIVER RATE Running as a Solo – No student available (Pay is based on All Miles) |
|---|---|---|---|
| 0 - 5 Months | N/A | N/A | N/A |
| 6 - 11 Months | 0.40 | 0.22 | 0.22 |
| 12 - 17 Months | 0.42 | 0.23 | 0.23 |
| 18 - 23 Months | 0.44 | 0.23 | 0.23 |
| 24 - 29 Months | 0.46 | 0.24 | 0.24 |
| 30 - 35 Months | 0.47 | 0.24 | 0.27 |
| 36 - 41 Months | 0.47 | 0.25 | 0.28 |
| 42 - 53 Months | 0.48 | 0.25 | 0.28 |
| 54 - 59 Months | 0.49 | 0.25 | 0.28 |
| 60 - 71 Months | 0.49 | 0.26 | 0.29 |
| 72+ Months | 0.51 | 0.26 | 0.29 |

1  MAYALL HURLEY P.C.
   WILLIAM J. GORHAM (SBN: 151773)
2  wgorham@mayallaw.com
   ROBERT J. WASSERMAN (SBN: 258538)
3  rwasserman@mayallaw.com
   NICHOLAS J. SCARDIGLI (SBN: 249947)
4  nscardigli@mayallaw.com
   2453 Grand Canal Boulevard
5  Stockton, California 95207-8253
   Telephone:  (209) 477-3833
6  Facsimile:  (209) 473-4818

7  ACKERMANN & TILAJEF, P.C.
8  Craig J. Ackermann (SBN: 229832)
   cja@ackermanntilajef.com
9  1180 South Beverly Drive, Suite 610
   Los Angeles, CA 90035
10 Telephone:  (310) 277-0614
   Facsimile:  (310) 277-0635
11
   Melmed Law Group P.C.
12 Jonathan Melmed (SBN: 290218)
   jm@melmedlaw.com
13 1180 South Beverly Drive, Suite 610
   Los Angeles, CA 90035
14 Telephone:  (310) 824-3828
   Facsimile:  (310) 862-6851
15

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAY 1 5 2017

BY _____
CUAUHTEMOC NUÑEZ, DEPUTY

16  Attorneys for Plaintiffs Curtis Markson, Mark McGeorge and the Putative Class

17              SUPERIOR COURT OF THE STATE OF CALIFORNIA

18                   COUNTY OF SAN BERNARDINO

19  CURTIS MARKSON and MARK            Case No.:  CIVDS1709404
20  MCGEORGE, individually and on behalf of
    the Putative Class,
                                       CLASS ACTION COMPLAINT FOR
21
         Plaintiff,                    1.  UNREASONABLE CHARGES AND
22                                         PENALTIES ASSOCIATED WITH
                                           TRAINING FOR CDL LICENSES
23  vs.                                2.  UNLAWFUL, UNFAIR OR
24  CRST International, Inc., CRST Expedited,  FRAUDULENT BUSINESS PRACTICES
    Inc.; and DOES 1-100, inclusive,
                                       JURY TRIAL DEMANDED
25
         Defendants.
26

27  ///

28  ///

Class Action Complaint
Page 1 of 21

1   Plaintiffs Curtis Markson and Mark McGeorge and bring this Class Action on behalf of all

2   other similarly situated individuals against CRST International, Inc., CRST Expedited, Inc., and

3   Does 1 through 100.  Plaintiffs allege that, from at least four years prior to the filing of this action,

4   CRST International, Inc. and CRST Expedited, Inc., and Does 1-100 have engaged in unlawful,

5   unfair or fraudulent business practices.  These unlawful, unfair or fraudulent business practices

6   include, but are not limited to a) knowingly using false and misleading advertising to induce

7   Plaintiffs, Student Drivers and Drivers into entering their Pre-Employment Driver Training

8   Agreement and Driver Employment Contract, b) utilizing the harsh terms of their Pre-

9   Employment Driver Training Agreement and Driver Employment Contract to trap Plaintiffs,

10  Student Drivers and Drivers in their employ and/or to penalize them for leaving, c) charging

11  Plaintiffs, Student Drivers and Drivers more than they actually paid for their Driver Training

12  Program, d) charging Plaintiffs, Student Drivers and Drivers more than they actually paid for

13  DOT physicals and drug screens, transportation, lodging and other administrative fees, e) not

14  giving Drivers credit for the reduced rate at which they were are paid,  and f) not giving Drivers

15  credit for amounts repaid through payroll deductions.

16                                          **PARTIES**

17  1.      Curtis Markson ("Markson") is and at all times relevant herein was a resident of

18  California.

19  2.      Mark McGeorge ("McGeorge") is and at all times relevant herein was a resident of

20  California.

21  3.      CRST International, Inc. ("CRST International") is an Iowa Corporation and, at all

22  times relevant herein, was conducting and transacting business in the State of California.

23  4.      CRST Expedited, Inc. ("CRST Expedited") is an Iowa Corporation and, at all times

24  relevant herein, was conducting and transacting business in the State of California.

25  5.      CRST International, CRST Expedited and Does 1-100 are collectively referred to as

26  Defendants.

27  ///

28  ///

---

Class Action Complaint
Page 2 of 21

6.      Plaintiffs are not aware of the true names and capacities of the Defendants sued herein as Does 1 through 100, whether individual, corporate, associate, or otherwise and therefore sues such Defendants by these fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.   Plaintiffs are informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' injuries and damages herein alleged were legally caused by such Defendants. Unless otherwise indicated, each Defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-Defendant.

7.      Plaintiffs informed and believes and thereupon alleges that at all times mentioned herein, each of the Defendants, including each Doe Defendant, was acting as the agent, servant, employee, partner and/or joint venturer of and was acting in concert with each of the remaining Defendants, including each Doe Defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action. Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

## JURISDICTION AND VENUE

8.      Venue is proper in this Court because a contract between the parties which is subject of this dispute was entered into in San Bernardino County, and said contract provides that any claim, litigation, or dispute arising from or related to said contract shall be litigated in San Bernardino. See **Exhibit 1** [1]. Plaintiffs hereby demand a jury trial.

/ / /

/ / /

/ / /

/ / /

---

[1] Exhibits 1 - 5 are incorporated by this reference as though fully set forth herein. Some exhibits have been reduced and/or redacted due to their size and content.

**GENERAL ALLEGATIONS**

9.    CRST International is one of the nation's largest transportation companies, providing total transportation solutions and comprehensive logistics services to customers all over North America. CRST International boast annual revenues exceeding $1 billion and the ability to operate with zero debt.

10.    CRST International has eight integrated operating companies that work together to span the transportation industry and deliver a seamless customer experience. CRST International's operating companies include CRST Expedited, CRST Malone, Inc., CRST Logistics, Inc., CRST Dedicated Services, Inc., CRST Specialized Transportation, Inc., BESL Transfer Company, Pegasus Transportation, and Gardner Trucking.

11.    CRST International recruits individuals to obtain commercial drivers' licenses and drive for the company in print, over the radio, on television and on the internet. CRST International touts a "successful, professional truck driving career" and invites individuals to select which of its operating companies they want to drive for.

12.    CRST International promises "job stability and job security," representing that their teams "average the most miles per truck in the industry." Drivers are further promised "industry-leading pay," "a sign-on bonus," and "[m]edical coverage from Day One," "[a]ccident and disability insurance," "[p]aid vacations," "[f]ree live insurance" amongst a host of other benefits.

13.    As one of the nation's largest carriers, CRST International trains thousands of new drivers every year. Interested individuals are offered the opportunity to earn their Commercial Driver's License in Cedar Rapids, Iowa or through one of driver training schools CRST International partners with throughout the country.

14.    With more than 3,500 drivers, CRST Expedited operates one of the industry's largest fleets of drivers.

15.    Individuals interested in driving for CRST Expedited are funneled to the website joincrst.com, a hotline or one of CRST Expedited's recruiters. "More opportunity," "More Freight," and "More Miles," as well as individualized bonus are also promised.

16.     Individuals interested in driving for CRST Expedited are then presented with two options:

> "Option 1: 100% sponsored training at an accredited school with one of the shortest employment commitments in the industry."

> Option 2: $6,500 initial price gets you top-quality training, higher wages, and a competitive sign-on bonus."

17.     In addition to a rewarding truck driving career, CRST Expedited promises "THE LONGEST AVERAGE TRUCKING MILES IN THE INDUSTRY," GUARANTEED HOME TIME: ONE DAY OFF FOR EVERY WEEK OUT," "99% NO-TOUCH, 80% DROP-AND-HOOK FREIGHT," "AFFORDABLE TOP-CARRIER MEDICAL/DENTAL/LIFE INSURANCE," "MATCHED 401(K) PLAN," "AVERAGE FLEET AGE OF JUST 1 1/4 YEARS," "HUNDREDS OF NEW TRUCKS WITH LATE-MODEL EQUIPMENT," and "INDUSTRY-LEADING TRUCK DRIVING SAFETY PROGRAM."

18.     Once committed, individuals (referred to as "Student Drivers") are placed in CRST Expedited's Driver Training Program.

19.     CRST Expedited operates a training facility in Cedar Rapids, Iowa and partner with several other training schools throughout the country (referred to as the "Educational Facility"). Student Drivers who reside in California and some of its surrounding states are funneled to the Educational Facility known as the Advance School of Driving in Fontana, California.

20.     CRST Expedited's Driver Training Program consists of four phases: Phase 1 consists of driver training at the Educational Facility; Phase 2 is CRST Expedited's orientation program held at a site selected by CRST Expedited; Phase 3 is CRST Expedited's finishing school consisting of hands on over-the-road driving training with one of CRST Expedited's lead drivers; and Phase 4 is CRST Expedited's professional development program, which consists of specialized class room training and a mentoring program conducted by Defendants' operations transition team.

21.     Once at an Educational Facility, Student Drivers are required to sign CRST Expedited's Pre-Employment Driver Training Agreement.

22.     A copy of the Pre-Employment Driver Training Agreement provided to and signed by McGeorge is attached hereto as **Exhibit 2.**

1    23.    Pursuant to CRST Expedited's Pre-Employment Driver Training Agreement,

2  Student Drivers are advanced tuition as well as transportation, lodging and other expenses. *Id*. at ¶

3  7-11.

4    24.    As defined in the Pre-Employment Driving Training Agreement, Transportation

5  Costs for Phase 1 means the costs incurred to transport Student Drivers via transportation arranged

6  and authorized by Defendants from Student Drivers' homes to the Educational Facility and

7  Transportation Costs for Phase 2 means the costs incurred to transport Student Drivers via

8  transportation arranged and authorized by Defendants from the Educational Facility to the site

9  where the orientation program takes place. *Id*. at ¶ 7.

10   25.    Similarly, Lodging Costs mean the hotel/motel rate charged for Student Drivers

11  staying in rooms made available to them at a hotel or motel selected by CRST Expedited per an

12  arrangement with the hotel/motel. *Id*. at ¶ 8.

13   26.    Under the Pre-Employment Driving Training Agreement, if Student Drivers are

14  dismissed or voluntarily withdraw from the Driver Training Program before commencing Phase 3,

15  they must repay the all amounts advanced for tuition, lodging, and transportation, as well as their

16  DOT physical and Drug Screen.  These amounts become immediately due and payable upon any

17  dismissal, breach or withdrawal from the Driver Training Program.  If these amounts are not paid

18  within thirty days, Student Drivers are also responsible for any and all costs incurred in collecting

19  and enforcing the Pre-Employment Driver Training Agreement including, but not limited to,

20  interest, attorneys' fees and costs. *Id*. at ¶ 12, subsection b.

21   27.    Further, if, within the initial ten (10) month term of their employment, (a) they

22  breach the Driver Employment Contract, or (b) are terminated for due cause, then Student Drivers

23  will owe and immediately must pay to CRST Expedited (i) $6,500, plus (ii) the amounts advanced

24  by CRST Expedited on their behalf for the DOT physical and drug screen, lodging and

25  transportation costs not yet repaid, plus (iii) interest commencing as of the first day of employment

26  under the Driver Employment Contract. *Id*. at ¶ 12, subsection e, (2).

27  / / /

28  / / /

1       28.    Under the Pre-Employment Driving Training Agreement, Phase 3 and Phase 4 are

2   completed only if the Student Driver and CRST Expedited execute a Driver Employment Contract,

3   and after the Student Driver successfully completes Phase 1 and Phase 2.  Once executed, Student

4   Drivers become employees of CRST Expedited (referred to as "Drivers").

5       29.    A copy of the Driver Employment Contract provided to and signed by Markson is

6   attached hereto as **Exhibit 1**.

7       30.    CRST Expedited's Driver Employment Contract is for a term of ten months.

8       31.    During this time, Drivers may be terminated with or without Due Cause, by mutual

9   agreement, or upon their death.  Due Cause is defined as Drivers' breach of the Driver

10  Employment Contract or failure to satisfy or comply with any standards, requirements, or

11  obligations set forth in the CRST Professional Driver's Handbook.  *Id.* at ¶ 4.

12      32.    Under the Driver Employment Contract, Drivers agree to reimburse CRST

13  Expedited amounts "advanced on behalf of Employee, in accordance with the Pre-Employment

14  Driver Training Agreement, the payment of certain tuition, lodging, transportation, and other

15  expenses and fees incurred by Employee in the course of Employee participating in the Driver

16  Training Program. . ." *Id.* at ¶ 6.

17      33.    Specifically, Drivers agree to begin reimbursing CRST Expedited for the advances

18  referenced above following their completion of Phase 3.  *Id.* at ¶ 6, subsection a.  Once qualified as

19  a Company Driver, CRST Expedited begins deducting up to $40.00 per week from Drivers'

20  paycheck to repay the amounts advanced during Phase 1 of the Driver Training Program.  *Id.*

21  These deductions continue until Drivers have re-paid the entire principal amount, plus interest.

22      34.    Further, in the event that Drivers breach the Driver Employment Contract and/or are

23  terminated for Due Cause (something judged exclusively by CRST Expedited), they must

24  immediately pay CRST Expedited (i) $6,500, plus (ii) the amounts advanced for DOT Physical and

25  Drug Screens, lodging and transportation, plus (iii) interest.  Again, Drivers are also responsible for

26  any and all costs incurred by CRST Expedited in collecting and enforcing these amounts.  *Id.* at ¶

27  6, subsection b.

28  / / /

Class Action Complaint
Page 7 of 21

35.     Markson attended a Driver Training Program sponsored by CRST Van Expedited, Inc. in October 2012. The training Markson received was insufficient and he was not well equipped for the road upon completing training. After completing the Driver Training Program and spending approximately three months on the road, Markson was called back for retesting by the DMV. Markson failed that test.

36.     Thereafter, Markson's license lapsed, his employment ended and Defendants began efforts to collect amounts advanced under the Pre-Employment Driver Training Agreement.

37.     In or about Fall of 2016, Markson decided to return to the trucking industry. After being hired by another company, but before he could begin his orientation, Markson was informed that was ineligible for employment because he was still under contract with Defendants.

38.     When Markson contacted Defendants about the issue, he was informed that he would need to fulfill his contractual obligations with Defendants. Further, although they offered to hire him back, he was also informed that he would be required to participate in the Driver Training Program again. Markson was promised a $1,500 sign-on bonus if he returned. Believing he had no other option, Markson agreed to return to Defendants.

39.     During Phase 1 of his training, Markson entered into a new Pre-Employment Driver Training Agreement with CRST Expedited.

40.     At the completion of Phase 2, Markson and the other Student Drivers sign CRST Expedited's Driver Employment Contact (**Exhibit 1**, *supra*).

41.     After he completed the training and started driving, Markson quickly discovered that he was not making anywhere near the money he was led to believe he would make through Defendants' representations.

42.     In or around February 2017, Markson secured employment with another trucking company. On March 2, 2017, Markson was charged $6,500 against his earned wages. Defendants have since employed a collections agency and attorney to attempt to collect the unpaid amount.

43.     Markson did not receive all of the $1,500 sign-on bonus he was promised. Nor did he receive a credit for the remainder against the amounts purportedly owed to Defendants.

1    44.    McGeorge became interested in a career in truck driving in Fall of 2016. After

2    submitting his resume online, one of Defendants' recruiters contacted McGeorge. McGeorge was

3    told that his schooling would cost $4,000, that he would not be charged for his physical or drug

4    screen, that he would only have to pay back $40 per week for the first ten months and that, if he

5    stayed past ten months, the remainder of his debt would be forgiven.

6    45.    When he reported to the Educational Facility, McGeorge found things very different

7    than previously represented. First and foremost, the cost of the Driver Training Program was

8    $6,500, not the promised $4,000. McGeorge was also apprised of additional amounts that he and

9    the other Student Drivers would be charged for including their physical, drug screen, and lodging.

10    46.    Notwithstanding the foregoing, McGeorge signed CRST Expedited's Pre-

11    Employment Driver Training Agreement (**Exhibit 2**) and began their Driver Training Program.

12    47.    McGeorge, along with two other Student Drivers, were assigned to a room in

13    Defendants' dormitory, which featured sparse furnishing, shared lavatory facilities and modest

14    cafeteria.

15    48.    Like Markson, the training provided to McGeorge was subpar. Because of the large

16    number of Student Drivers participating in each training session, McGeorge and other Student

17    Drivers received very little one-on-one training and even less time behind the wheel. When

18    behind-the-wheel training was provided, McGeorge and the other Student Drivers spent the

19    majority of their time waiting for their turn rather than receiving actual instruction. Throughout the

20    entire Driver Training Program, McGeorge received only approximately 5-6 hours of actual

21    behind-the-wheel training.

22    49.    After completing the first two phases of CRST Expedited's Driver Training

23    Program, McGeorge executed CRST Expedited's Driver Employment Contract, was paired with a

24    trainer and sent off on his over-the-road training.

25    50.    Thereafter, CRST Expedited began making deductions from his already meager pay.

26    These deductions included a "PHYS/DRUG SCREEN" fee (believed to be associated with the

27    amounts advanced under the Pre-Employment Driver Training Agreement), a "HOUSING FEE"

28    (believed to be associated with the lodging he received during Defendants' Driver Training

1  Program, a "WIRE CHARGE" (believed to be associated with Drivers' use of their mandatory
2  Comdata pay cards), and an unidentified deduction coded simply "PE".

3       51.     Although he had already seen $75 deducted from his wages for "HOUSING FEE",
4  and although he only incurred $330 in housing costs during the Driver Training Program (see
5  **Exhibit 3**), McGeorge was charged a $420 "HOUSING FEE" on his February 28, 2017 wage
6  statement.

7       52.     CRST Expedited's other Drivers were subjected to similar unlawful deductions and
8  chargebacks. These included fees and costs associated with pre-employment medical and/or
9  physical exams, fees as well as other miscellaneous items.

10      53.     Because he was not making the money represented by Defendants to induce him
11 into their employment, McGeorge also left his employment with CRST Expedited. As it did with
12 Markson, Defendants have retained a law firm to collect the amounts purportedly owed to them.
13 **Exhibit 4**.

14      54.     Defendants use the Pre-Employment Driver Training Agreement and Driver
15 Employment Contract as an illegal means to manipulate and control the Student Drivers and
16 Drivers. Defendants' scheme first involves inducing individuals into entering the contracts by
17 knowingly making false and misleading representations about what employment will entail as well
18 as intentionally failing to disclose relevant information such as high turnover rates and low average
19 pay/miles amongst Student Drivers and Drivers. Once hooked, Defendants then use the harsh
20 terms of the Pre-Employment Driver Training Agreement and Driver Employment Contract to trap
21 Student Drivers and Drivers in their employ, and to penalize those that leave.

22      55.     The Pre-Employment Driver Training Agreement and Driver Employment Contract
23 are both procedurally and substantively unconscionable.

24      56.     The contracts are presented to Student Drivers on a take-it-or-leave-it basis, often
25 after Student Drivers have already invested significant time and effort into the Driver Training
26 Program. Worse, Student Drivers who do not complete Phase 1 and Phase 2 must immediately pay
27 the amounts advanced for their tuition, lodging, transportation, DOT physical and drug screen, and
28 other administrative fees. Similarly, Drivers who do not complete Phase 3, Phase 4 and the entire

Class Action Complaint
Page 10 of 21

1   10-month contract, must immediately pay the sum of $6,500, plus the amounts advanced for their
2   DOT physical and drug screen, transportation, lodging and other administrative fees not already
3   deducted from their pay.

4        57.    The $6,500 penalty charged to Drivers who do not complete the 10-month contract
5   is unreasonable, not representative of the actual cost of Defendants' Driver Training Program or
6   the value provided to the Drivers, and is intended to discourage Drivers from ending their
7   employment with Defendants and/or to penalize those that do.

8        58.    The costs charged to Student Drivers and Drivers for their DOT physical and drug
9   screen, transportation, lodging and other administrative fees are also unreasonable, not
10   representative of their actual cost to Defendants or the value provided to the Drivers, and is
11   intended to discourage Drivers from ending their employment with Defendants and/or to penalize
12   those that do.

13        59.    Defendants recoup all or part of the amounts advanced on behalf of the Student
14   Drivers and Drivers during Phase 3 of the Driver Training Program and the remainder of their 10-
15   month contract via reduced per mile rates. **Exhibit 5.**

16        60.    Notwithstanding the foregoing, Drivers whose employment ended before the
17   completion of their 10-month contract received no credit for the same and remained liable for the
18   entire $6,500 as well as the amounts advanced for their DOT physical and drug screen,
19   transportation, lodging and other administrative fees not already deducted from their pay.

20        61.    During the four years prior to the filing of this action, Defendants had agreements
21   with truck driving schools to pay significantly less than $6,500 tuition for each Student Driver who
22   participates in the Driver Training Program.  On information and belief, the actual and reasonable
23   cost of the trucking school to Defendants is somewhere between $2,000 and $2,500.

24        62.    Defendants did not inform Plaintiffs, Student Drivers or Drivers, in the Pre-
25   Employment Driver Training Agreement or Driver Employment Contract or otherwise, that they
26   actually paid significantly less than the $6,500 purportedly advanced to them for their tuition.
27   ///
28   ///

63.    Defendants did not inform Plaintiffs, Student Drivers or Drivers, in the Pre-Employment Driver Training Agreement or Driver Employment Contract or otherwise, that the $6,500 figure was set without regard to the actual costs incurred by Defendants.

64.    The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the $6,500 constitute an illegal penalty clause or illegal liquidated damages clause under Civil Code section 1671.

65.    The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the $6,500 tuition also constitute an invalid and unenforceable penalty in violation of Civil Code section 1671, and are, therefore, an unlawful and unfair business practice because, inter alia, they purport to require the repayment of more than the actual cost of the tuition paid, which sum is not characterized as liquidated damages, and because Student Driver and Drivers whose employment ends before the completion of their 10-month contract are not given credit for tuition costs already paid back through Defendants' payment of reduced mileage rates and/or the deductions from their pay.

66.    The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the amounts advanced for DOT physicals and drug screens, transportation, lodging and other administrative fees constitute an illegal penalty clause or illegal liquidated damages clause under Civil Code section 1671.

67.    The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the amounts advanced by CRST Expedited for DOT physicals and drug screens, transportation, lodging and other administrative fees constitute an invalid and unenforceable penalty in violation of Civil Code section 1671, and are, therefore, an unlawful and unfair business practice because, inter alia, they purport to require the repayment of more than the actual cost of such services/goods, which sum is not characterized as liquidated damages, and because Student Driver and Drivers whose employment ends before the completion of their 10-month contract are not given credit for amounts already paid back through Defendants' payment of reduced mileage rates and/or the deductions from their pay.

68.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of $6,500 in addition to the amounts advanced for DOT physicals and drug screens, transportation, lodging and other administrative fees also constitute a deceptive business practice because the agreements imply Defendants actually paid these amounts, and Defendants did not inform Plaintiffs, Student Drivers and Drivers that the actual costs were significantly less.

69.     From at least four years prior to the filing of this action, Defendants have adopted and employed unfair business practices.  These unfair business practices included knowingly using false and misleading advertising to induce Plaintiffs, Student Drivers and Drivers into entering the Pre-Employment Driver Training Agreement and Driver Employment Contract, utilizing the harsh terms of the Pre-Employment Driver Training Agreement and Driver Employment Contract to trap them in their employ and/or penalize them for leaving, charging Plaintiffs, Student Drivers and Drivers more than they actually paid for their Driver Training Program, charging Plaintiffs, Student Drivers and Drivers more than they actually paid for DOT physicals and drug screens, transportation, lodging and other administrative fees, not giving Drivers credit for the reduced rate at which Plaintiffs and Drivers were are paid, and not giving drivers credit for amounts repaid through payroll deductions.

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs seek to maintain this action as a class action as to the First and Second causes of action.  Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure.  The putative class which Plaintiffs seek to represent consists of the following:

> All individuals who signed a Pre-Employment Driver Training Agreement and participated in Phase 1 and/or Phase 2 of Defendants' Driver Training Program but did not complete the 10-month Driver Employment Contract between May 12, 2013 through the date of final judgment (the "Student Driver Class"); and

> All individuals who signed a Pre-Employment Driver Training Agreement and Driver Employment Contract but did not complete the 10-month Driver Employment Contract between May 12, 2013 through the date of final judgment (the "Driver Class").

1 | The Student Driver Class and Driver Class are referred to collectively as the Class or Class

2 | Members. Plaintiff reserves the right under Rule 3.765, California Rules of Court, to amend or

3 | modify the Class description with greater specificity or further division into subclasses or

4 | limitation to particular issues.

5 |      71.    The class of persons is so numerous that joinder of all members is impracticable,

6 | and the disposition of their claims in a class action is a benefit to the parties and to the Court.

7 | Plaintiff is informed and believes, and based thereon alleges, that Defendants employ more than

8 | 1,000 employees who satisfy the class definition. Although the exact number and identity of class

9 | members is not presently known, they can be identified in Defendants' records through coordinated

10 | discovery pursuant to this class action.

11 |      72.    This action may be maintained as a class pursuant Code of Civil Procedure section

12 | 382 because the questions of law and fact which are common to class members clearly

13 | predominate over any questions affecting only individual members and because a class action is

14 | superior to other available methods for adjudicating the controversy.

15 |      73.    There are numerous common questions of law and fact arising out of Defendants'

16 | conduct. This class action focuses on Defendants' a) charging Class Members more than they

17 | actually paid for their Driver Training Program, b) charging Class members more than they

18 | actually paid for DOT physicals and drug screens, transportation, lodging and other administrative

19 | fees, and c) not giving Class Members credit for the reduced rate at which they are paid and/or not

20 | amounts repaid through payroll deductions.

21 |      74.    Furthermore, common questions of fact and law predominate over any questions

22 | affecting only individual members of the class. The predominating common or class-wide

23 | questions of law and fact include the following:

24 |           a.    Whether the Pre-Employment Driver Training Agreement was procedurally

25 |              and substantively unconscionable;

26 |           b.    Whether the Driver Employment Contract was procedurally and

27 |              substantively unconscionable;

28 |

c.    Whether Defendants charged Class Members more than they actually paid for their Driver Training Program;

d.    Whether Defendants charged Class members more than they actually paid for DOT physicals and drug screens, transportation, lodging and other administrative fees;

e.    Whether Defendants failed to credit Drivers for the reduced rate at which they were paid;

f.    Whether Defendants failed to give Drivers credit for amounts repaid through payroll deductions;

g.    Whether Defendants engaged in false and misleading advertising for the purpose of inducing individuals to enter into Pre-Employment Driver Training Agreements and Driver Employment Contracts;

h.    Whether Defendants utilized the harsh terms of the Pre-Employment Driver Training Agreement and Driver Employment Contract to trap Class Members in their employ and/or penalize them for leaving;

i.    Whether the alleged violations constitute unfair business practices;

j.    Whether the Class is entitled to injunctive relief; and

k.    Whether the Class is entitled to unpaid wages, civil and statutory penalties and/or restitutionary relief, and the amount of the same.

75.    Plaintiffs' claims are typical of the claims of the members of the Class as a whole, all of whom have sustained and/or will sustain damage and injury as a proximate and/or legal result of the alleged violations of Defendants.  Plaintiffs' claims are typical of those of the Class because Defendants subjected Plaintiffs and each member of the Class to the same violations alleged herein.

76.    The defenses of Defendants, to the extent that such defenses apply, are applicable generally to the whole Class and are not distinguishable as to the proposed class members.

77.    Plaintiffs will fairly and adequately protect the interests of all members of the Class, and has retained attorneys with extensive experience in litigation, including class and

1   representative actions.  Plaintiff has no interests that conflict with those of the Class.  Plaintiffs are

2   able to fairly and adequately protect the interests of all members of the class because it is in their

3   best interest to prosecute the claims alleged herein in order to obtain the full compensation due

4   herself and the other class members.

5           78.     A class action is superior to any other method available for fairly and efficiently

6   adjudicating the controversy because 1) joinder of individual class members is not practical, 2)

7   litigating the claims of individual class members would be unnecessarily costly and burdensome

8   and would deter individual claims, 3) litigating the claims of individual class members would

9   create a risk of inconsistent or varying adjudications that would establish incompatible standards of

10  conduct for Defendants, 4) class members still working for Defendants may be fearful of retaliation

11  if they were to bring individual claims, 5) class members would be discouraged from pursuing

12  individual claims because the damages available to them are relatively small, and 6) public policy

13  encourages the use of the class actions to enforce employment laws and protect individuals who, by

14  virtue of their subordinate position, are particularly vulnerable.

15          79.     Judicial economy will be served by maintenance of this lawsuit as a class action.  To

16  process numerous virtually identical individual cases will significantly increase the expense on the

17  Court, the class members and Defendants, all while unnecessarily delaying the resolution of this

18  matter.  There are no obstacles to effective and efficient management of this lawsuit as a class

19  action by this Court, and doing so will provide multiple benefits to the litigating parties including,

20  but not limited to, efficiency, economy, and uniform adjudication with consistent results.

21          80.     Notice of a certified class action and any result or resolution of the litigation can be

22  provided to class members by mail, email, publication, or such other methods of notice as deemed

23  appropriate by the Court.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**FIRST CAUSE OF ACTION**
**Unreasonable Charges or Penalties Associated with Training Individuals**
**to Obtain their CDL Truck Driver Licenses**
**[Cal. Civil Code § 1671 and Code of Civil Procedure § 1060]**
**On behalf of Plaintiffs and the Student Driver Subclass**

81.    Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

82.    California Civil Code section 1671 provides that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made".

83.    Under California Code of Civil Procedure section 1060, any person interested in a written instrument, . . ., or under a contract, . . ., may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties . . , including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a biding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought.

84.    As set forth above, Defendants' Pre-Employment Driver Training Agreement and Driver Employment Contract are procedurally and substantively unconscionable. They unreasonably call for the repayment of amounts greater than those actually expended by Defendants and do so without a) apprising Class Members of the amounts actually expended or b) accounting for amounts collected from the Class. The clauses constitute unreasonable penalties which are injurious to Plaintiffs and the Class Members.

85.    Defendant's course of conduct, act and practice in violation of the California law mentioned above constitutes a violation of section 1671 of the California Civil Code.

1    86.    Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that

2  Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement is an illegal

3  liquidated damages clause in violation of Civil Code section 1671.

4    87.    Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that

5  Paragraph 6, subsection b, of the Driver Employment Contract is an illegal liquidated damages

6  clause in violation of Civil Code section 1671.

7    88.    Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that

8  Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement is

9  procedurally and substantively unconscionable and therefore unenforceable as against Plaintiff's

10  and the other Class Members.

11    89.    Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that

12  Paragraph 6, subsection b, of the Driver Employment Contract is procedurally and substantively

13  unconscionable and therefore unenforceable as against Plaintiff's and the other Class Members.

14    90.    The harm to Plaintiffs and the Student Driver Subclass in being dissuaded from

15  leaving their employment with Defendants before the completion of their ten-month contract

16  and/or being penalized for the same outweighs the utility, if any, of Defendants' policies and

17  practices.

18    91.    Wherefore, Plaintiffs and the other Class Members have been injured as set forth

19  above and request relief as hereafter provided.

20  

**SECOND CAUSE OF ACTION**
**Unlawful, Unfair, or Fraudulent Business Practices**
**[Cal. Bus. and Prof. Code § 17200 *et seq*.]**
**On Behalf of Plaintiff and the Class**

23    92.    Plaintiffs hereby reallege and incorporate by reference each and every allegation set

24  forth above as though fully set forth herein, except as said paragraphs are inconsistent with the

25  allegations of this cause of action.

26    93.    Section 17200 of the California Business and Professions Code prohibits any

27  unlawful, unfair, or fraudulent business practices.

28

1    94.    Section 90.5(a) of the Labor Code states that it is the public policy of California to

2   enforce vigorously minimum labor standards in order to ensure employees are not required to work

3   under substandard and unlawful conditions, and to protect employers who comply with the law

4   from those who attempt to gain competitive advantage at the expense of their workers by failing to

5   comply with minimum labor standards.

6    95.    From at least four years prior to the filing of this action, through the actions and/or

7   omissions alleged herein, Defendants have engaged in unfair competition within the meaning of

8   section 17200 of the California Business and Professions Code.  These unfair business practices

9   included knowingly using false and misleading advertising to induce Plaintiffs, Student Drivers

10   and Drivers into entering the Pre-Employment Driver Training Agreement and Driver Employment

11   Contract, utilizing the harsh terms of the Pre-Employment Driver Training Agreement and Driver

12   Employment Contract to trap them in their employ and/or penalize them for leaving, charging

13   Plaintiffs, Student Drivers and Drivers more than they actually paid for their trucking school and

14   their Driver Training Program, charging Plaintiffs, Student Drivers and Drivers more than they

15   actually paid for DOT physicals and drug screens, transportation, lodging and other administrative

16   fees, not giving Drivers credit for the reduced rate at which they are paid, not giving drivers credit

17   for amounts repaid through payroll deductions, seeking to collect liquidated damages based upon

18   unenforceable and illegal clauses (Paragraph 12, subsection e., (2), of the Pre-Employment Driver

19   Training Agreement and Paragraph 6, subsection b, of the Driver Employment Contract), and

20   holding on their books as debt the difference between the actual cost to Defendants of the trucking

21   school, DOT physicals and drug screens, transportation, lodging and other administrative fees, and

22   the unconscionable amount they sought to collect over and above this cost.

23    96.    The harm to Plaintiffs and the other Class Members outweighs the utility, if any, of

24   Defendants' policies and practices. Therefore, Defendants' actions described herein constitute an

25   unfair business practice or act within the meaning of section 17200 of the California Business and

26   Professions Code.

27    97.    Wherefore, Plaintiffs and the other Class Members have been injured as set forth

28   above and request relief as hereafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.  That this Court certify the Class identified in Paragraph 70;

2.  That this Court certify Plaintiffs as the representatives of the Class identified in Paragraph 70;

3.  That this court award restitutionary relief to Plaintiffs and the members of the Class including, but not limited to, all monies which were unlawfully withheld or collected and for such orders or judgments as may be necessary to restore to the Class any monies or property which Defendants have acquired by means of their unlawful or unfair business practices, including all amounts paid and debts purportedly owed pursuant to Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement and Paragraph 6, subsection b, of the Driver Employment Contract;

4.  For injunctive relief, including that available under Business and Professions Code Section 17203, prohibiting Defendants from continuing their unlawful and unfair business practices;

5.  For declaratory relief, including a declaration that Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement and Paragraph 6, subsection b, of the Driver Employment Contract and are illegal liquidated damages clauses in violation of Civil Code section 1671, and that all amounts paid and debts purportedly owed pursuant thereto declared null, void and uncollectable;

6.  For declaratory relief, including a declaration that Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement and Paragraph 6, subsection b, of the Driver Employment Contract procedurally and substantively unconscionable and therefore unenforceable;

7.  That this Court award attorneys' fees and costs, including those available under Code of Civil Procedure section 1021.5;

8.   That this Court award prejudgment and post-judgment interest according to any
applicable provision of law or as otherwise permitted by law; and

9.   Such other and further relief as the court deems just and proper.

DATED: May 12, 2017                    MAYALL HURLEY P.C.

By_____
                                       ROBERT J. WASSERMAN
                                       WILLIAM J. GORHAM
                                       NICHOLAS J. SCARDIGLI
                                       Counsel for Plaintiff and the Putative Class

DATED: May 12, 2017                    ACKERMANN & TILAJEF P.C.

By___/s/ Craig J. Ackermann_____
                                       CRAIG J. ACKERMANN
                                       Counsel for Plaintiffs and the Putative Class

DATED: May 12, 2017                    MELMED LAW GROUP P.C.

By___/s/ Jonathan Melmed_____
                                       JONATHAN MELMED
                                       Counsel for Plaintiffs and the Putative Class

# EXHIBIT 1



**CRST Expedited, Inc.**
**Driver Employment Contract**

*D215*

This Driver Employment Contract (the "Contract") is entered into this day, **12/22/16**, (the "Effective Date") in the State of California by and between CRST Expedited, Inc. ("CRST"), an Iowa corporation, and **CURTIS MARKSON** ("Employee"). In consideration of the parties' respective promises in this Contract and other good and valuable consideration, including but not limited to the expenses, fees and costs advanced by CRST for Employee's driver training as more fully detailed in the Pre-Employment Driver Training Agreement previously entered into by and between the parties (the "Pre-Employment Driver Training Agreement"), CRST and Employee agree as follows:

1. EMPLOYMENT.  Upon the terms and conditions set forth in this Contract, CRST employs Employee, and Employee accepts employment by CRST.

2. DUTIES OF EMPLOYEE.  While employed by CRST, Employee shall devote full time to the performance of Employee's duties to CRST under this Contract. Employee's duties on behalf of CRST are to act as a truck driver for CRST and fulfill all related duties, including, but not limited to, satisfying and complying with all of the standards, requirements, obligations, and conditions set forth in the CRST Professional Driver's Handbook (the "Handbook"). Employee acknowledges having received the Handbook during CRST's orientation program, has read, and understands the policies and standards set forth therein. CRST may at any time change Employee's job responsibilities, duties, and standards. CRST may from time to time unilaterally amend the Handbook, and Employee hereby consents to and agrees to be bound under this Contract by any and all such amendments upon receiving notice of the amendment. Employee will not directly or indirectly engage or participate in any activities at any time during the term of this Contract in conflict with duties under this Contract and/or the best interests of CRST. During the Term, Employee shall complete "Phase 3" and "Phase 4" of CRST's Driver Training Program, as those terms are defined in the Pre-Employment Driver Training Agreement.

3. TERM OF EMPLOYMENT.  The term of CRST's employment of Employee under this Contract shall be for a period of ten (10) months commencing as of the Effective Date (the "Term") subject to termination prior to the end of the Term pursuant to Section 4 of this Contract. Following the Term, CRST shall employ Employee on an at-will basis, and either party may terminate the employment relationship at any time effective immediately

4. TERMINATION OF EMPLOYMENT.  During the Term Employee's employment may be terminated only for the following reasons:  (1) by CRST with or without Due Cause effective immediately, (2) by mutual agreement of CRST and Employee, or (3) upon the death of Employee. For the purposes of this Contract, "Due Cause" means Employee's breach of this Contract and/or Employee's failure to satisfy or comply with any of the standards, requirements, obligations and conditions set forth in the Handbook.

5. COMPENSATION.  As compensation for the services to be rendered by Employee under this Contract, CRST will pay Employee the wages, benefits and other compensation set forth in the Handbook. CRST may unilaterally change at any time, by written amendment, the terms, and conditions of the compensation set forth in the Handbook, and Employee hereby consents to all such amendments and agrees that such amendments shall be binding upon Employee.

Exhibit A
Page 64 of 91

6. REIMBURSEMENT OF ADVANCES FOR DRIVER TRAINING PROGRAM. Student acknowledges and agrees that CRST advanced on behalf of Employee, in accordance with the Pre-employment Driver Training Agreement, the payment of certain tuition, lodging, transportation and other expenses and fees incurred by Employee in the course of Employee participating in the Driver Training Program ("DTP") sponsored by CRST. Student agrees to reimburse CRST for such advances as follows:

a.        Following the conclusion of Phase 3 and the first week of Phase 4 of the DTP and when Employee is qualified as a company driver (i.e., in the driver's sixth week of employment), CRST will begin deducting on a weekly basis up to a maximum of $40.00 per week from the driver's paycheck in repayment of CRST's advance on behalf of Student payment of certain fees and expenses during Phase 1 of the DTP, as identified in paragraph section 9 of the Pre-Employment Driver Training Agreement. This deduction will continue throughout Employee's employment until Employee pays in full the principal amount plus interest accruing at the rate equal to the lesser of 1.5% per month or the maximum rate permitted by applicable federal and state usury laws. Employee hereby authorizes the aforementioned deduction from Employee's paycheck.

b. If during the Term either (1) Employee breaches this Contract, or (2) Employee's employment is terminated for Due Cause, then Student will owe and immediately must pay to CRST the following sum: (i) $6,500, plus (ii) the amounts advanced by CRST on behalf of Student (pursuant to section 9 of the Pre-Employment Driver Training Agreement) for Student's DOT physical and drug screen expenses, Lodging Cost and Transportation Cost incurred during Phase 1 that Student has not yet repaid via deductions from weekly pay pursuant to this section 6(a), plus (iii) interest accruing as of the Effective Date at a rate equal to the lesser of 1.5% per month or the maximum rate permitted by applicable federal and state usury laws. Employee hereby authorizes CRST to deduct the amount due under this section 6.b, if any, from the compensation amounts otherwise due to Employee pursuant to section 5 upon the termination of Employee's employment. In the event it is necessary for CRST to employ a collection agency or legal counsel to enforce Employee's obligation under this section 6.b, CRST shall be entitled to recover from Employee such enforcement costs and expenses, including attorneys' fees.

7. ASSIGNMENT. This Contract is not assignable or transferable by Employee. This Contract and the rights and obligations of both parties may be assigned by CRST without notice to or consent of Employee to any other organization with which CRST shares some degree of common ownership, or pursuant to or as the part of a corporate reorganization, corporate restructuring or merger involving CRST, or the sale by CRST of a substantial portion of CRST's assets or business or as part of any similar transaction involving CRST.

8. NOTICE. Any notice required to be given under this Contract must be in writing and made by personal delivery, facsimile, reputable overnight carrier, or registered or certified mail, return receipt requested and postage prepaid to the address for Employee set forth in the signature block of this Contract, and in the case of CRST, to CRST Expedited, Inc., Attn: David L. Rusch, President/COO, P.O. Box 68, Cedar Rapids, IA 52406. Notice shall be deemed given upon delivery in the case of personal delivery or delivery via overnight carrier, upon receipt of electronic confirmation in the case of delivery via facsimile, and three days after the date of mailing in the case of delivery via mail. Either party may change the address to which notices are to be sent by giving written notice to the other party.

CRST Expedited, Inc. Driver Employment Contract

9. ENTIRE CONTRACT; BINDING EFFECT. This Contract contains the entire agreement and understanding by and between CRST and Employee with respect to the employment of Employee, and no representations, promises, agreements, or understandings, written or oral, not contained herein shall be of any force or effect. This Contract shall be binding upon and inure to the benefit of CRST and Employee, CRST's legal representatives, successors, and assigns.

10. WAIVER AND AMENDMENT. No waiver of any provision of this Contract shall: (1) be valid unless it is in writing and signed by the party against whom the waiver is sought to be enforced, or (2) be deemed a waiver of any other provision of this Contract at such time or at any other time. No change, amendment, or modification of this Contract shall be valid or binding unless it is in writing and signed by the party intended to be bound.

11. SEVERABILITY. If one or more of the provisions contained in this Contract is deemed invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the validity and enforceability of the other provisions.

12. GOVERNING LAW AND VENUE. CRST and Employee hereby agree that this Contract and its construction and interpretation shall at all times and in all respects be governed by the laws of the State of California, and any claim, litigation, or dispute arising from or related to this Contract shall be litigated in the appropriate federal or state court located in San Bernardino, California. Employee hereby consents to personal jurisdiction and venue in such court.

Employee acknowledges having read the terms of this contract and had the opportunity to have the terms used herein and their consequences explained by employee's attorney prior to signing.

IN WITNESS WHEREOF, CRST Expedited, Inc. and Employee have duly executed this Contract as of the date, year, and place first above written.

CRST Expedited, Inc.                          Employee SS#: _____

By _____                      Signature: _____

   _____                      Name: CURTIS L. MARKSON

Its _____                     Address: _____

                                              City, State: _____

                                              Zip Code: _____

# EXHIBIT 2

## CRST EXPEDITED, INC.
### PRE-EMPLOYMENT DRIVER TRAINING AGREEMENT

WHEREAS Student (as defined below) has been admitted to the Driver Training Program ("DTP") sponsored by CRST Expedited, Inc., an Iowa corporation located at 3930 16ᵗʰ Avenue SW, Cedar Rapids, Iowa 52404 ("CRST");

WHEREAS, Student wishes to complete driver training at the Educational Facility (as defined below) and attend orientation at CRST without incurring up-front certain costs normally associated with such training;

WHEREAS, CRST wishes to advance Student the amounts set forth below (the "Advance") to cover Student's costs to attend the Educational Facility and orientation at CRST in exchange for Student's agreement to repay the Advance in full to CRST through payroll deductions if CRST offers Student employment following Student's completion of the truck driver training program or otherwise through cash payment(s) made by Student to CRST;

WHEREAS, CRST and Student acknowledge and agree that CRST is expending a significant sum of money so that Student may be trained in the specialized skills necessary to become a truck driver, which constitutes valuable consideration for Student's obligations set forth in this Agreement;

WHEREAS, CRST and Student acknowledge and agree that CRST's provision of the Advance to Student will result in a substantial direct benefit to Student, that CRST derives no immediate advantage for having Student attend driver training school, and that the cost of the training and other items set forth in this Agreement are worth at least the amount of the Advance;

WHEREAS, this Agreement governs the terms and conditions of the DTP unless and until CRST and Student mutually execute a Driver Employment Contract (as defined below), at which time the terms and conditions of the Driver Employment Contract will govern the DTP; and

WHEREFORE, in consideration of the mutual promises and covenants contained in this Agreement, Student and CRST agree as follows:

1.     Student. For purposes of this Agreement, "Student" means the person who is signing this Agreement and whose name, address, telephone number and Social Security Number are as follows:

Student's Name  _Mark McGeorge_

Student's Address          Street and Number _____

                           City, State, Zip Code _____

Student's Phone  _____

Student's SSN  _____

2.     DTP Phases. The DTP consists of the following four (4) phases: "Phase 1" consists of driver training at the Educational Facility; "Phase 2" is CRST's orientation program held at a site selected by CRST; "Phase 3" is CRST's finishing school consisting of hands on over-the-road driver training with a CRST lead driver; and "Phase 4" is CRST's professional development program, which consists of specialized class room training and a mentoring program conducted by CRST's operations transition team. Phase 3 and Phase 4 will be conducted only if Student and CRST sign the Driver Employment Contract.

3.     Educational Facility. For purposes of this Agreement "Educational Facility" means the following independent contractor educational institution which is a separate, non CRST affiliated education facility, where Student shall participate in Phase 1:

Name:     Advanced School of Driving

Address   13946 Juruna Ave.,

          Fontana, CA 92337

Phone:    (909) 349 -2585

4.     Driver Employment Contract. For purposes of this Agreement, "Driver Employment Contract" means the written employment contract (separate and distinct from this Agreement) pursuant to which CRST employs

Page 1 of 5

Student as an over-the-road truck driver. Student understands that after Student's successful completion of Phase and Phase 2, CRST has the option, at its sole discretion, to execute with Student the Driver Employment Contract and employ Student as an over-the-road truck driver according to the terms of the Driver Employment Contract. Nonexclusive preconditions for Student's employment with CRST as an over-the-road truck driver include (but are not limited to) the following: (a) Student and CRST mutually executing the Driver Employment Contract; (b) Student successfully completing Phase 1 and Phase 2; and (c) Student fully complying with all DOT requirements and all CRST requirements for employment as an over-the-road truck driver. Under no circumstances shall any term of this Agreement be interpreted as guaranteeing Student the right to employment with CRST. Additionally, Student and CRSTs execution of the Driver Employment Contract is a precondition for Student participating in Phase 3

5.     Not a Contract for Employment Student and CRST acknowledge and agree that this Agreement is not and shall under no circumstances be construed to be a contract for the employment of Student. Unless and until CRST, at its sole discretion, and Student mutually execute the Driver Employment Contract, Student shall not be considered to be an employee of CRST. Further, Student shall not have by reason of Student being a party to this Agreement any rights as an employee of CRST or be entitled to any employee benefits available to CRST employees. Student agrees that Student will not be paid any compensation until such time as CRST and Student execute the Driver Employment Contract.

6.     DTP Prerequisites. Student agrees that all of the following are preconditions for Student's participation in Phase 1 which Student must satisfy at Student's sole expense; Student shall be dismissed from the DTP upon failure to satisfy any of the conditions:

     a.    By the beginning of Phase 1, Student must complete a CRST Company Driver Application.

     b.    By the beginning of Phase 1, Student must provide to CRST certification by a physician approved by CRST that Student has passed the United States Department of Transportation ("DOT") physical exam and a drug screen;

     c.    By the beginning of Phase 1, Student must pay a nonrefundable processing fee of $50.00 for administrative costs of processing Student's enrollment; and

     d.    By the end of the first week of Phase 1, Student must obtain a Class A Commercial Driver's License ("CDL") learner's permit.

7.     Transportation Cost. As used in this Agreement, "Transportation Cost" means for Phase 1 the cost incurred to transport Student via transportation arranged and authorized by CRST from Student's home to the Educational Facility, and for Phase 2 the cost incurred to transport Student via transportation arranged and authorized by CRST from the Educational Facility to the site where the orientation program takes place.

8.     Lodging Cost For purposes of this Agreement: "Lodging Cost" means the hotel/motel rate charged for Student to stay at Driver Training Lodging during Phase 1 or Phase 2. "Driver Training Lodging" means lodging on a multiple person occupancy per room basis available to DTP students at a hotel or motel selected by CRST per an arrangement with the hotel/motel providing for reduced rates. CRST shall have no obligation to pay any costs or expense incurred by Student to stay or reside at any location other than the Driver Training Lodging during the course of Student's participation in the DTP.

9.     Phase 1 Expenses. If Student satisfies the preconditions contained in section 6, CRST will pay on behalf of Student, subject to Student's repayment obligations set forth in section 12, the following expenses incurred by Student while attending Phase 1: (a) the tuition charged by Educational Facility for Student to attend Phase 1, (b) Student's Lodging Cost, (c) Student's Transportation Cost; and (d) Student's DOT physical and drug screen. Notwithstanding the forgoing, if Student does not complete Phase 1 for any reason whatsoever, then CRST shall not be obligated to Student to pay any of the tuition charged by the Educational Facility, but Student nonetheless must repay to CRST any amount of the tuition that CRST does pay on Student's behalf.

10.    Phase 2 Expenses. If Student successfully completes Phase 1, CRST will advance on behalf of Student the Lodging Cost and Transportation Cost incurred by Student while attending Phase 2.

11.    Further Covenants of the Student.

     a.    if Student is offered a Driver Employment Contract by CRST upon completion of Phase 2, Student shall accept such employment with CRST;

     b.    unless and until Student has repaid all amounts owed under this Agreement, Student will neither

seek nor accept any work, as an employee, independent contractor, or otherwise, from any motor carrier other than CRST. Student shall provide CRST with tax returns and other information requested by CRST from time to time to certify that Student is in compliance with this covenant; and

c.    Student acknowledges and agrees that CRST is making a substantial investment in Student's driver training, that Student's compliance with the restrictions and obligations set forth in this section are necessary to protect CRST's investment in Student's driver training, and that CRST would be irreparably and continually damaged if Student fails to comply with Student's obligations set forth in this Paragraph, for which money damages would not be adequate. An immediate breach of this Agreement will result if Student fails to comply with Student's obligations in this Agreement, including but not limited to Student's obligations set forth in this section.

12.    Repayment of CRST Advances.

a.    Student acknowledges that the amounts to be advanced by CRST on behalf of Student pursuant to sections 9 and 10 of this Agreement will equal or exceed the sum of $2,000.

b.    If Student breaches this Agreement, is dismissed or voluntarily withdraws from the DTP or orientation prior to commencing Phase 3, then Student will owe and must pay to CRST the entire amount of CRST's advances under sections 9 and 10. The amount owed by Student to CRST under this section 12.b will be immediately due and payable upon Student's breach, dismissal or withdrawal from the DTP and will accrue interest from such date at a rate equal to the lesser of 1.5% per month or the maximum rate permitted by applicable federal and state usury laws. Further, if Student fails to repay the amounts owed within thirty (30) days of Student's breach, withdrawal or dismissal from DTP, Student shall additionally pay CRST all costs of collection and enforcement, including reasonable attorney's fees and court costs, that CRST incurs through its efforts to collect the amounts Student owes or otherwise enforce this Agreement, whether through a suit brought for collection or enforcement, or through probate, bankruptcy, or other judicial proceeding.

c.    Student agrees that in the event Student breaches or threatens to breach any of Student's obligations in this Agreement, including but not limited to the Covenants in section 11, CRST shall also be entitled to:

  (1)    A temporary restraining order and/or a preliminary and/or a permanent injunction in order to prevent Student from breaching Student's obligations under this Agreement; and

  (2)    Money damages which shall include, but not be limited to, recovery by CRST of the amounts of fees, compensation or other remuneration earned by Student as a result of any breach of this Agreement.

d.    Provided, however, Student shall not be obligated to repay the Advance to CRST if:

  (1)    Student dies;

  (2)    Student becomes disabled such that Student may not perform the essential duties of a truck driver, with or without reasonable accommodation; or

  (3)    Student is hired by CRST and CRST terminates Student without Cause, with Cause defined as:

    (i)    Student's breach of any of Student's obligations under any Driver Employment Contract Student executes with CRST;

    (ii)    Student's violation of any of CRST's material written policies applicable to its employees.

e.    Student acknowledges and understands that the terms of the CRST Driver Employment Contract that Student will be required to execute in order to be employed by CRST include, among others, the following:

  (1)    Following Student's completion of Phase 3 and the first week of Phase 4, and when Student is qualified as a company driver (i.e., in the driver's sixth week of employment) CRST shall

begin to deduct from Student's weekly pay the amount of CRST's advances for Phase 1 expenses (pursuant to section 9 above), up to a maximum amount of Forty Dollars ($40.00) per week, until the entire sum advanced by CRST for the payment of such expense items are paid in full.

(2)   If during the initial ten (10) month term of Student's employment either (a) Student breaches the Driver Employment Contract, or (b) Student's employment is terminated for due cause, then Student will owe and immediately must pay to CRST the following sum: (i) $6,500, plus (ii) the amounts advanced by CRST on behalf of Student (pursuant to section 9) for Student's DOT physical and drug screen expenses. Lodging Cost and Transportation Cost incurred during Phase 1 that Student has not yet repaid via deductions from weekly pay pursuant to this section 12.c(1), plus (iii) interest commencing as of the first day of employment under the Driver Employment Contract at a rate equal to the lesser of 1.5% per month or the maximum rate permitted by applicable federal and state usury laws.

13.   **Release of Liability.** Student understands that truck driving can be dangerous, and Student accepts all risks inherent in participating in Phase 1 and Phase 2. Student agrees to be responsible for all of Student's medical, incidental or consequential liabilities and expenses that may be incurred as a result of Student's participation in Phase 1 and Phase 2. Student acknowledges and agrees that Student has no right to worker's compensation, health care, or disability benefits from CRST until such time as CRST and Student both execute the Driver Employment Contract. Until such time as Student executes the Driver Employment Contract, Student hereby releases CRST from any and all liability to Student for any injury, loss, claim or other damage Student may sustain except for injuries and losses directly caused by the gross negligence of CRST.

14.   **Dismissal or Withdrawal from DTP.** Student may withdraw from the DTP any time at Student's discretion. Student also acknowledges that the Educational Facility reserves the right to dismiss Student for any of the following reasons:

a.   Any statement in Student's application which proves to be untrue or misleading.

b.   The Educational Facility decides, in its sole discretion, that Student does not meet or possess the skills necessary to satisfy the requirements of its curriculum or does not meet the requirements necessary to obtain a CDL.

c.   The Educational Facility decides, in its sole discretion, that Student is in violation of any other rules or regulations imposed by the Educational Facility.

15.   **Phase 1 Records.** Student acknowledges and agrees that the Educational Facility may not give to Student, or any third party, any information or confirmation of Student's grades, transcripts or successful completion of training in Phase 1 until after CRST gives written notification to the Educational Facility that Student has fully performed all of Student's obligations under the this Agreement. Student further acknowledges and agrees that CRST may refuse to provide to Student or any third party any certificates or transcripts, including Student's CDL, if Student is in breach of this Agreement, unless and until Student has satisfied Student's repayment obligations as set forth in Paragraph 12 of this Agreement.  Student releases the Educational Facility and CRST from any obligation to give such information, or liability for complying with this Agreement.

16.   **Taxation.** Student is responsible for the payment of any and all taxes, whether federal, state or local in nature, that result from any receipt by Student of benefits hereunder, including, but not limited to, income taxes, Social Security and Medicare taxes, and unemployment compensation taxes. Student shall indemnify and hold CRST harmless from any liability for the payment for such taxes, and shall pay all of CRST's costs, fees, assessments and expenses (including attorneys' fees) related to such liability.

17.   **Miscellaneous Terms.** This Agreement contains the entire agreement and understanding between Student and CRST with respect to the subject matter hereof. Until the parties mutually execute the Driver Employment Contract, no representations, promises, agreements, or understandings, written or oral, that are not contained in this Agreement shall be of any force or effect. No change, amendment, or modification of this Agreement shall be valid or binding unless it is in writing and signed by the parties intended to be bound. If any one or more of the provisions of this Agreement is found to be unenforceable, then such unenforceability shall not affect the validity and enforceability of the other provisions. The terms and provisions of this Agreement and the rights and obligations contained herein shall be construed under and governed by the laws of the State of Iowa.

By signing this Agreement, Student acknowledges that Student has read this Agreement and understands and agrees to all of the terms and conditions and acknowledgments contained in this Agreement.

STUDENT                                         CRST EXPEDITED, INC ("CRST")

Signature: _~Aaek L. McAk~_                     By: _____

Print: _Mack mcGunge_                           Name: _____

Date: _11-10-16_                                Title: _____

                                                Date: _____

Page 5 of 5

# EXHIBIT 3

# ASSIGNMENT OF WAGES
## AND
## PAYROLL DEDUCTION AGREEMENT

In exchange for amounts advanced to me under the Pre-Employment Driver Training Agreement and for other valuable consideration, and as security for payment of such advancement, I agree to assign to my employer, CRST, Inc., 3930 16th Avenue S.W., Cedar Rapids, Iowa, my current and future wages. (See below for breakdown of estimated deductions.)

The deductions from wages shall begin 6 weeks from my hire date ("Effective Date"), at the rate of $40 per week, and shall continue with consecutive payments to be made during each of each such periods, until all sums due as above stated are paid in full.

Wages, as the term is used, includes wages, salary, commissions, bonuses and all other sums payable in cash, owed, or to be owing by said employer to said wage earner. as compensation for such employment.

Housing costs are based on the student finishing school in the normal allotted time. If the student is held over for additional training at school, additional housing costs at $165 per week may be advanced by CRST on the student's behalf.

If I am employed by CRST, Inc. after the Effective Date, this assignment is my authorization to CRST, Inc. to deduct from my paychecks the amounts specified in, and according to the terms of this agreement.

Dated this _____ day of _November_____, 20_16_

_A.S.D._
School

_Mark McGeorge_
Wage Earner (Print Name)

_Mark McG_
Wage Earner (Signature)

Breakdown of deductions:

Physical        $ 50.00
Drug Screen   $ 50.00
Housing         $ 330.00 **Additional $165 per week if over 2 weeks
Transportation $_____
Processing fee $ 50.00
Total            $ 180.00

# EXHIBIT 4



# LOCKHART, MORRIS & MONTGOMERY, INC.

1401 N Central Expy Suite 201 • Richardson, TX 75080-4681
(214) 522-6424 (P) • (214) 377-8839 (F)

March 22, 2017


MARK MCGEORGE

Balance:              $9,301.85
Account#:            540566
Original Creditor:   CRST INTERNATIONAL, INC

Please be advised that we represent the company referenced above. There is presently an unpaid balance due to Lockhart, Morris & Montgomery, Inc. Please remit the balance in full to the address below. We accept payment by phone, cashier's check, personal check, money order or credit card.

If you fail to comply with this, appropriate remedies will be pursued for the collection of said sum, together with any additional fees or costs allowed by law as outlined in the contract which you signed with the original creditor.

As required by law, you are hereby notified that a negative credit mark reflecting on your credit record may be submitted to one or more credit reporting agencies if you fail to fulfill the terms of your credit obligations. This debt is assumed to be valid by this organization.

Unless you notify us within thirty (30) days after receiving this notice, to dispute the validity of the debt or any portion thereof, Lockhart, Morris & Montgomery, Inc. will assume that debt is valid.

If you notify us in writing within thirty (30) days after receiving this notice that the debt or any portion thereof is disputed, we will obtain verification of the debt or a copy of a judgment against you, (if applicable), and mail a copy of such verification or judgment to you.

If you request to us in writing within thirty (30) days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

If you cannot pay the full amount, you will need to call our office to make suitable payment arrangements.

This is a communication from a debt collector in an attempt to collect a debt. Any information obtained will be used for that purpose.

Please Make your check or money order payable to:

Lockhart, Morris & Montgomery, Inc.
1401 N Central Expy
Suite 201
Richardson, TX 75080-4681

If you wish to arrange payment by phone, please call us at the number below.

Lockhart, Morris & Montgomery, Inc.
(214) 522-6424

---

*** Detach Lower Portion And Return With Payment ***                1076-HWLMML10-A21-05/19/16

Y1D7E7E1A3
1401 N Central Expy Suite 201
Richardson TX 75080-4681
FORWARDING SERVICE REQUESTED



IF YOU WISH TO PAY BY CREDIT CARD, CIRCLE ONE AND FILL IN THE INFORMATION BELOW.

| | VISA | DISCOVER | |
| --- | --- | --- | --- |

CARD NUMBER                                          EXP. DATE

CARD HOLDER NAME                                     CVV

SIGNATURE                              AMOUNT PAID

Balance: $9,301.85
Account#: 540566
Original Creditor: CRST INTERNATIONAL INC

A21 - 1076
MARK MCGEORGE

Lockhart, Morris & Montgomery, Inc.
1401 N Central Expy Suite 201
Richardson TX 75080-4681



# EXHIBIT 5



## CRST Expedited, Inc
## Pay Scale

**1st 28 Days with Trainer:** This pay scale applies to all drivers with no experience who need to go out with a trainer for OTR training.

| Contract Students | Split Mileage Pay Scale | Projected Gross Weekly Earnings | | |
|---|---|---|---|---|
| | | 3,200 miles/wk | 3,650 miles/wk | 4,100 miles/wk |
| 1st 28 Days With a Trainer | $0.25 | $400 | $455 | $515 |

**Contract Students:** This pay scale applies to contract students in the CRST sponsored training program. It does not apply to those who have prepaid their training costs (see below).

| Length of Experience The months indicated apply to completed service. | Split Mileage Pay Scale | 4,000 miles/wk | 5,000 miles/wk | 6,000 miles/wk |
|---|---|---|---|---|
| 2 months | $0.25 | $500 | $625 | $750 |
| 3-5 months | $0.26 | $520 | $650 | $780 |
| 6-11 months | $0.33 | $660 | $825 | $990 |

*Note: At the 13 month, all drivers fall under the Experienced Pay Table. (see below)*

**Recent Graduates and Prepaid Students:** This pay scale applies to drivers with a CDL who need OTR training with a lead driver. It also includes those who prepaid their training costs.

| Length of Experience The months indicated apply to completed service. (See example below) | Split Mileage Pay Scale | 4,000 miles/wk | 5,000 miles/wk | 6,000 miles/wk |
|---|---|---|---|---|
| 0-3 months | $0.33 | $660 | $825 | $990 |
| 4-5 months | $0.34 | $680 | $850 | $1020 |
| 6-11 months | $0.35 | $700 | $875 | $1050 |

*Note: At the 13 month, all drivers fall under the Experienced Pay Table. (see below)*

**Experienced Drivers:** This pay scale applies to experienced drivers who do not require tuition reimbursement assistance and who do not need OTR training with a lead driver.

| Length of Experience (e.g. If driver has 6 mon. completed service they'd be at the next pay scale.) | Split Mileage Pay Scale | 4,000 miles/wk | 5,000 miles/wk | 6,000 miles/wk |
|---|---|---|---|---|
| 3 months | $0.33 | $660 | $825 | $990 |
| 4-5 months | $0.35 | $700 | $875 | $1,050 |
| 6-11 months | $0.36 | $720 | $900 | $1,080 |
| 12-17 months | $0.38 | $760 | $950 | $1,140 |
| 18-23 months | $0.40 | $800 | $1,000 | $1,200 |
| 24-30 months | $0.41 | $820 | $1,025 | $1,230 |
| 31-42 months | $0.42 | $840 | $1,050 | $1,260 |
| 43-54 months | $0.43 | $860 | $1,075 | $1,290 |
| 55-72months | $0.44 | $880 | $1,100 | $1,320 |
| 73+ months | $0.46 | $920 | $1,150 | $1,380 |

## Lead Driver (Trainer) Compensation and Qualifications

To qualify as a Lead Driver, you must be approved by both Operations and Safety. In general, this means that you would need to have a minimum of 6 months of OTR experience. This must include four months of winter driving in the last twelve months, to include driving OTR between the months of November and March. You also need the approval of our Operations and Safety Departments. Once approved, you would attend a brief Lead Driver Class where we would teach you how to train a student with a new CDL.

| Length of Completed Service | LEAD DRIVER RATE, when training a student (Pay is based on Split Miles) | LEAD DRIVER RATE Running as a Solo by choice, when Students are available. (Pay is based on All Miles) | LEAD DRIVER RATE Running as a Solo – No student available (Pay is based on All Miles) |
|---|---|---|---|
| 0 - 5 Months | N/A | N/A | N/A |
| 6 - 11 Months | 0.40 | 0.22 | 0.22 |
| 12 - 17 Months | 0.42 | 0.23 | 0.23 |
| 18 - 23 Months | 0.44 | 0.23 | 0.23 |
| 24 - 29 Months | 0.46 | 0.24 | 0.24 |
| 30 - 35 Months | 0.47 | 0.24 | 0.27 |
| 36 - 41 Months | 0.47 | 0.25 | 0.28 |
| 42 - 53 Months | 0.48 | 0.25 | 0.28 |
| 54 - 59 Months | 0.49 | 0.25 | 0.28 |
| 60 - 71 Months | 0.49 | 0.26 | 0.29 |
| 72+ Months | 0.51 | 0.26 | 0.29 |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

Curtis Markson; et al.

CASE NO.: CIV0S1709404

vs.

**CERTIFICATE OF ASSIGNMENT**

CRST International, Inc.

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the _____ District of the Superior Court under Rule 404 of this court for the checked reason:

☑ General          ☐ Collection

| | Nature of Action | Ground |
|---|---|---|
| | 1. Adoption | Petitioner resides within the district |
| ☒ | 2. Conservator | Petitioner or conservatee resides within the district. |
| | 3. Contract | Performance in the district is expressly provided for. |
| | 4. Equity | The cause of action arose within the district. |
| | 5. Eminent Domain | The property is located within the district. |
| | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| | 9. Mandate | The defendant functions wholly within the district. |
| | 10. Name Change | The petitioner resides within the district. |
| | 11. Personal Injury | The injury occurred within the district. |
| | 12. Personal Property | The property is located within the district. |
| | 13. Probate | Decedent resided or resides within the district or had property within the district. |
| | 14. Prohibition | The defendant functions wholly within the district. |
| | 15. Review | The defendant functions wholly within the district. |
| | 16. Title to Real Property | The property is located within the district. |
| | 17. Transferred Action | The lower court is located within the district. |
| | 18. Unlawful Detainer | The property is located within the district. |
| | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| | 20. Other _____ | |
| ☒ | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

Place of Business                                    13946 Jurapa Ave

| NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR | | ADDRESS | |
|---|---|---|---|
| Fontana | | CA | 92337 |
| CITY | | STATE | ZIP CODE |

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on May 12, 2017 _____ at Stockton _____, California

_Signature of Attorney/Party_

13-16503-360, Rev 06-2014

CERTIFICATE OF ASSIGNMENT

Exhibit A
Page 80 of 91

<u>GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM</u>                    05/17/17

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

## THE SAN BERNARDINO COUNTY COMPLEX LITIGATION PROGRAM

Department S-26 is the Complex Litigation Department for the Superior Court of the State of California, County of San Bernardino. It is located at the San Bernardino Justice Center, 247 West Third Street, San Bernardino, CA 92415-0210, on the eighth floor. Judge David Cohn presides in the Complex Litigation Department. The telephone number for the Complex Litigation Department's Judicial Assistant is 909-521-3519.

## DEFINITION OF COMPLEX LITIGATION

As defined by California Rules of Court, rule 3.400(a), a complex case is one that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel.

Complex cases typically have one or more of the following features:

- A large number of separately represented parties.
- Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve.
- A substantial amount of documentary evidence.
- A large number of witnesses.
- Coordination with related actions pending in one or more courts in other counties or states or in a federal court.
- Substantial post-judgment judicial supervision.

Complex cases may include, but are not necessarily limited to, the following types of cases:

- Antitrust and trade regulation claims.
- Construction defect claims involving many parties or structures.
- Securities claims or investment losses involving many parties.
- Environmental or toxic tort claims involving many parties.
- Mass torts.
- Class actions.
- Claims brought under the Private Attorney General Act (PAGA).
- Insurance claims arising out of the types of claims listed above.
- Judicial Council Coordinated Proceedings (JCCP).
- Cases involving complex financial, scientific, or technological issues.

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

## CASES ASSIGNED TO THE COMPLEX LITIGATION DEPARTMENT

### A. Cases Designated by a Plaintiff as Complex or Provisionally Complex

Commencing July 1, 2016, all cases designated by a plaintiff as complex or provisionally complex on the *Civil Case Cover Sheet* (Judicial Council Form CM-100) will be assigned initially to the Complex Litigation Department. At the time the complaint is filed, the Court Clerk will schedule an Initial Case Management Conference as provided by California Rules of Court, rule 3.750, for a date no later than seventy-five days after the filing of the complaint.

A plaintiff designating the case as complex or provisionally complex must file and serve a Notice of the Initial Case Management Conference and a copy of these guidelines, along with service of the summons and complaint, no later than thirty days before the conference, and must file the Notice and Proof of Service with the court.

A defendant who agrees that the case is complex or provisionally complex may indicate a "Joinder" on the *Civil Case Cover Sheet* (Form CM-100).

A defendant who disagrees that the case is complex or provisionally complex may raise the issue with the court at the Initial Case Management Conference.

### B. Cases Counter-Designated By a Defendant as Complex or Provisionally Complex

Commencing July 1, 2016, all cases which were not designated by a plaintiff as complex or provisionally complex, but which are *counter-designated* by a defendant (or cross-defendant) as complex or provisionally complex on the *Civil Case Cover Sheet* (Judicial Council Form CM-100), will be assigned or re-assigned to the Complex Litigation Department. At the time the counter-designation is filed, the Court Clerk will schedule an Initial Case Management Conference as provided by California Rules of Court, rule 3.750, for a date no later than forty-five days after the filing of the counter-designation.

A defendant or cross-defendant who files a complex counter-designation must serve a Notice of the Initial Case Management Conference and a copy of these guidelines no later than thirty days before the conference, and must file the Notice and Proof of Service with the court.

A plaintiff or other party who disagrees with the counter-designation may raise the issue with the court at the Initial Case Management Conference.

2

Revised August 10, 2016

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

#### C. Other Cases Assigned to the Complex Litigation Department

Commencing July 1, 2016, whether or not the parties designate the case as complex or provisionally complex, the following cases will be initially assigned to the Complex Litigation Department:

- All Construction Defect Cases.
- All Class Actions.
- All Cases Involving Private Attorney General Act (PAGA) Claims.
- All Judicial Council Coordinated Proceedings (JCCP).

At the time the complaint is filed, the Court Clerk will schedule an Initial Case Management Conference as provided by California Rules of Court, rule 3.750, for a date no later than seventy-five days after the filing of the complaint.

The plaintiff must file and serve a Notice of the Initial Case Management Conference and a copy of these guidelines, along with service of the summons and complaint, no later than thirty days before the conference, and must file the Notice and Proof of Service with the court.

### REFERRAL TO THE COMPLEX LITIGATION DEPARTMENT BY OTHER DEPARTMENTS

Commencing July 1, 2016, a judge who is assigned to a case may, but is not required to, refer the case to the Complex Litigation Department to be considered for treatment as a complex case if (1) the case was previously designated by a party as complex or provisionally complex, or (2) the referring judge deems the case to involve issues of considerable legal, evidentiary, or logistical complexity, such that the case would be best served by assignment to the Complex Litigation Department. Such a referral is not a re-assignment, but is a referral for consideration.

In any case referred by another judge to the Complex Litigation Department, the Complex Litigation Department will schedule an Initial Case Management Conference within thirty days and will provide notice to all parties along with a copy of these guidelines. If the case is determined by the Complex Litigation Department to be appropriate for treatment as a complex case, the case will be re-assigned to the Complex Litigation Department at that time. If the case is determined by the Complex Litigation Department *not* to be complex, it will be returned to the referring judge.

The *Civil Case Cover Sheet* (Judicial Council Form CM-100) may not reflect the presence of a PAGA claim. PAGA claims erroneously assigned to non-complex departments are subject to re-assignment by the assigned judge to the Complex Litigation Department.

Petitions for administrative writs of mandamus under Code of Civil Procedure section1094 are also assigned to the Complex Litigation Department, but are not subject to these Guidelines and procedures.

3                                                                    Revised August 10, 2016

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

## STAY OF DISCOVERY PENDING THE INITIAL CASE MANAGEMENT CONFERENCE

Commencing July 1, 2016, for cases that are assigned to the Complex Litigation Department, discovery is automatically stayed pending the Initial Case Management Conference, or until further order of the court. Discovery is not automatically stayed, however, for cases that were initially assigned to other departments and are referred to the Complex Litigation Department for consideration, unless the referring judge stays discovery pending determination by the Complex Litigation whether the case should be treated as complex.

## OBLIGATION TO CONFER BEFORE THE INITIAL CASE MANAGEMENT CONFERENCE

Prior to the Initial Case Management Conference, all parties are required to meet and confer to discuss the items specified in California Rules of Court, rule 3.750(b), and they are required to prepare a Joint Statement specifying the following:

- Whether additional parties are likely to be added, and a proposed date by which any such parties must be served.
- Each party's position whether the case should or should not be treated as a complex.
- Whether there are applicable arbitration agreements.
- Whether there is related litigation pending in state or federal court.
- A description of the major legal and factual issues involved in the case.
- Any discovery or trial preparation procedures on which the parties agree. The parties should address what discovery will be required, whether discovery should be conducted in phases or otherwise limited, and whether the parties agree to electronic service and an electronic document depository and, if so, their preferred web-based electronic service provider.
- An estimate of the time needed to conduct discovery and to prepare for trial.
- The parties' views on an appropriate mechanism for Alternative Dispute Resolution.
- Any other matters on which the parties request a court ruling.

The Joint Statement is to be filed directly in the Complex Litigation Department no later than five calendar days before the conference. This requirement of a Joint Statement is not satisfied by using Judicial Council Form CM-110, pursuant to California Rules of Court, rule 3.725(a), or by parties filing individual statements. Failure to participate meaningfully in the "meet and confer" process or failure to submit a Joint Statement may result in the imposition of monetary or other sanctions.

4                                                                      Revised August 10, 2016

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

## THE INITIAL CASE MANAGEMENT CONFERENCE

At the Initial Case Management Conference, the court will determine whether the action is a complex case, as required by California Rules of Court, rule 3.403. If the court determines the case is complex, the court will issue further management-related orders at that time. If the court determines the case is not complex, the case may be retained by the judge in Department S-26, but not treated as a complex case, or it may be reassigned to a different department; if the case was referred by another judge and the case is found to be inappropriate for treatment as a complex case, the case will be returned to the referring judge.

At the Initial Case Management Conference, the court and counsel will address the subjects listed in California Rules of Court, rule 3.750(b), and all issues presented by the Joint Statement.

Once a case is deemed complex, the function of the Initial Case Management Conference and all subsequent Case Management Conferences is to facilitate discovery, motion practice, and trial preparation, and to discuss appropriate mechanisms for settlement negotiations.

Lead counsel should attend the Initial Case Management Conference. Counsel with secondary responsibility for the case may attend in lieu of lead counsel, but only if he or she is fully informed about the case and has full authority to proceed on all issues to be addressed at the conference. "Special Appearance" counsel (lawyers who are not the attorneys of record) are not allowed. With the exception of minor parties (e.g., subcontractors with a limited scope of work in large construction defect cases), telephonic appearances are discouraged. California Rule of Court, rule 3.670, subdivision (f)(2), authorizes the court to require attendance at hearings in person "if the court determines on a hearing-by-hearing basis that a personal appearance would materially assist in the determination of the proceedings or in the effective management or resolution of the particular case." To assist the court in making this "hearing-by-hearing" determination, any party who intends to attend the Initial Case Management Conference telephonically must notify the court of such intention no later than five court days before the hearing. The court will make a determination at that time whether or not personal attendance is required.

## CASE MANAGEMENT ORDERS

In most cases, the court will issue formal, written case management orders. Typically, complex construction defect cases will proceed pursuant to such an order. Other cases involving numerous parties or unusual logistical complexity will likely be appropriate for such a written order as well. The need for a written case management order will be discussed at the Initial Case Management Conference or at later times as the need arises. The parties will prepare such orders as directed by the court.

5                                                                    Revised August 10, 2016

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

## FURTHER CASE MANAGEMENT CONFERENCES

After the Initial Case Management Conference, the court will schedule further case management conferences as necessary and appropriate on a case-by-case basis. As issues arise during discovery and preparation for trial, the parties may also request additional case management conferences by making arrangements through the Judicial Assistant assigned to the Complex Litigation Department (909-521-3519). The court will schedule such additional case management conferences at the earliest opportunity.

As with the Initial Case Management Conference, lead counsel should attend all case management conferences. Counsel with secondary responsibility for the case may attend in lieu of lead counsel, but only if he or she is fully informed about the case and has full authority to proceed on all issues to be addressed. "Special Appearance" counsel (lawyers who are not the attorneys of record) are not allowed. With the exception of minor parties (e.g., subcontractors with a limited scope of work in large construction defect cases), telephonic appearances are discouraged. California Rule of Court, rule 3.670, subdivision (f)(2), authorizes the court to require attendance at hearings in person "if the court determines on a hearing-by-hearing basis that a personal appearance would materially assist in the determination of the proceedings or in the effective management or resolution of the particular case." To assist the court in making this "hearing-by-hearing" determination, any party who intends to attend the Initial Case Management Conference telephonically must notify the court of such intention no later than five court days before the hearing. The court will make a determination at that time whether or not personal attendance is required.

## VOLUNTARY SETTLEMENT CONFERENCES

If all parties agree, the court is available to conduct settlement conferences. Requests for settlement conferences may be made at any Case Management Conference or hearing, or by telephoning the Judicial Assistant for the Complex Litigation Department (909-521-3519).

## MANDATORY SETTLEMENT CONFERENCES

In appropriate cases, the court may order mandatory settlement conferences. Parties with full settlement authority, including insurance adjustors with full settlement authority, must attend all mandatory settlement conferences in person. Availability by telephone is not allowed at mandatory settlement conferences.

Revised August 10, 2016

Exhibit A

Page 86 of 91

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

## MANAGEMENT OF CLASS ACTIONS

In class actions and putative class actions that are deemed complex, the Initial Case Management Conference will function as the Case Conference required by California Rules of Court, rules 3.762 and 3.763.

## OBLIGATION TO MEET AND CONFER REGARDING MOTIONS

In addition to any other requirement to "meet and confer" imposed by statute or Rule of Court in connection with motions, all counsel and unrepresented parties are required to "meet and confer" in a good faith attempt to eliminate the necessity for a hearing on a pending motion, or to resolve or narrow some of the issues. The moving party must arrange for the conference, which can be conducted in person or by telephone, to be held no later than four calendar days before the hearing. No later than two calendar days before the hearing, the moving party is required to file a notice in the Complex Litigation Department, with service on all parties, specifying whether the conference has occurred and specifying any issues that have been resolved. If the need for a hearing has been eliminated, the motion may simply be taken off-calendar. Failure to participate meaningfully in the conference may result in the imposition of monetary or other sanctions.

The obligation to "meet and confer" does not apply to applications to appear *pro hac vice* or to motions to withdraw as counsel of record.

## FORMAT OF PAPERS FILED IN CONNECTION WITH MOTIONS

Counsel and unrepresented parties must comply with all applicable statutes, Rules of Court, and Local Rules regarding motions, including but not limited to their format. Additionally, exhibits attached to motions and oppositions must be separately *tabbed*, so that exhibits can be easily identified and retrieved.

## ELECTRONIC SERVICE AND DOCUMENT DEPOSITORY

The parties, especially in cases involving numerous parties or large quantities of documents, are encouraged to agree to electronic service for all pleadings, motions, and other materials filed with the court as well as all discovery requests, discovery responses, and correspondence. Nevertheless, parties must still submit "hard" copies to the court of any pleadings, motions, or other materials that are to be filed.

## INFORMAL DISCOVERY CONFERENCES

The court is available for informal discovery conferences at the request of counsel. Such conferences may address the scope of allowable discovery, the order of discovery, issues of privilege,

Revised August 10, 2016

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

and other discovery issues that may arise. Counsel may contact the Judicial Assistant assigned to the Complex Litigation Department to schedule an informal conference (909-521-3519).

Before filing any discovery motion, the moving party is required to "meet and confer" with counsel as required by statute. If the "meet and confer" exchange fails to resolve all issues, the moving party is required to request an informal conference with the court before filing any discovery motion.

## CONFIDENTIAL DOCUMENT AND PROTECTIVE ORDERS

Proposed protective orders dealing with confidential documents should state expressly that nothing in the order excuses compliance with California Rules of Court, rules 2.550 and 2.551. Proposed protective orders that are not compliant with the requirements of the Rules of Court will be rejected.

## THE PRETRIAL CONFERENCE

The court will schedule a pre-trial conference, generally thirty to sixty days in advance of the trial. Counsel and the court will discuss the following matters, which counsel should be fully informed to address:

- Whether trial will be by jury or by the court.
- Anticipated motions *in limine* or the need for other pre-trial rulings.
- The anticipated length of trial.
- The order of proof and scheduling of witnesses, including realistic time estimates for each witness for both direct and cross-examination.
- If there is a large number of anticipated witnesses, whether counsel wish to have photographs taken of each witness to refresh the jury's recollection of each witness during closing argument and deliberation.
- Whether deposition testimony will be presented by video.
- The need for evidentiary rulings on any lengthy deposition testimony to be presented at trial.
- Stipulations of fact.
- Stipulations regarding the admission of exhibits into evidence.
- If there is a large amount of documentary evidence, how the exhibits will be presented in a meaningful way for the jury.
- The use of technology at trial, including but not limited to electronic evidence.
- Any unusual legal or evidentiary issues that may arise during the trial.

   Revised August 10, 2016

Exhibit A
Page 88 of 91

## GUIDELINES FOR THE COMPLEX LITIGATION PROGRAM

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN BERNARDINO
### JUDGE DAVID COHN
### DEPARTMENT S-26

### THE TRIAL READINESS CONFERENCE

Trial Readiness Conferences are held at 8:30 a.m. on the Thursday morning preceding the scheduled trial date. Counsel and unrepresented parties must comply fully with Local Rule 411.2, unless otherwise directed by the court. Failure to have the required materials available for the court may result in the imposition of monetary or other sanctions.

### TRIALS

Trial dates are generally Monday through Thursday, 10:00 a.m. to 12:00 p.m. and 1:30 p.m. to 4:30 p.m. Lengthy trials, however, may require deviation from this schedule. Unless otherwise ordered by the court, counsel and unrepresented parties must be present in the courtroom at least ten minutes before each session of trial is scheduled to begin.

Whenever possible, issues to be addressed outside the presence of the jury should be scheduled in a manner to avoid the need for the jury to wait.

Counsel are also directed to the "Rules and Requirements for Jury Trials" for Department S-26 (known as the "Green Sheet"). Copies are available upon request in Department S-26.

Revised August 10, 2016

                                                                                        Exhibit A
                                                                                        Page 89 of 91

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

SAN BERNARDINO JUSTICE CENTER
247 W. 3RD ST
SAN BERNARDINO, CA 92415-0210

CASE NO: CIVDS1709404

http://www.sb-court.org

------- APPEARANCE IS MANDATORY - Unless Case is Finalized --------

Appearance Date: 07/31/17      Time:  8:30      Dept: S26

IN RE: COMPLEX MARKSON -V- CRST INTERNATIONAL ET AL

NOTICE OF CASE ASSIGNMENT FOR ALL PURPOSES
NOTICE OF CASE MANAGEMENT CONFERENCE

PLEASE TAKE NOTICE, that the above-entitled case has been set for a
Case Management Conference on 07/31/17 at  8:30
in Department S26. You must appear at this hearing or your case may
be dismissed and monetary penalties may be imposed.

THIS CASE HAS BEEN ASSIGNED TO JUDGE DAVID COHN IN
DEPARTMENT S26 FOR ALL PURPOSES.

Your Joint Statement must be filed, directly in the Complex Litigation
Department, five (5) calendar days prior to the hearing.

TO THE PARTY SERVED: The setting of this date DOES NOT increase the
time you have to respond to the petition. The time for response is
clearly stated on the Summons.

Please see the Guidelines for the Complex Litigation Program for
further information. The guidelines may be found at the Court Website:
http://www.sb-court.org

A COPY OF THIS NOTICE MUST BE SERVED ON THE RESPONDENT
Nancy Eberhardt, Interim Court Executive Officer
Date: 05/17/17                          By: CUAUHTEMOC NUNEZ
--------------------------------------------------------------------
CERTIFICATE OF SERVICE
I am a Deputy Clerk of the Superior Court for the County of San
Bernardino at the above listed address. I am not a party to this
action and on the date and place shown below, I served a copy of the
above listed notice by:
( ) Enclosed in an envelope mailed to the interested party addressed
above, for collection and mailing this date, following ordinary
business practice.
(|) Enclosed in a sealed envelope, first class postage prepaid in the
U.S. mail at the location shown above, mailed to the interested party
and addressed as shown above, or as shown on the attached listing.
( ) A copy of this notice was given to the filing party at the
counter.
( ) A copy of this notice was placed in the bin located at this office
and identified as the location for the above law firm's collection of
file stamped documents.
DATE OF MAILING: 05/17/17
I declare under penalty of perjury that the foregoing is true and
correct. Executed on 05/17/17 at San Bernardino, CA  By: CUAUHTEMOC NUNEZ

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

SAN BERNARDINO JUSTICE CENTER
247 W. 3RD ST
SAN BERNARDINO, CA  92415-0210

CASE NO: CIVDS1709404

http://www.sb-court.org

------- APPEARANCE IS MANDATORY - Unless Case is Finalized --------

Appearance Date: 07/31/17     Time:  8:30     Dept: S26

IN RE: COMPLEX MARKSON -V- CRST INTERNATIONAL ET AL

NOTICE OF CASE ASSIGNMENT FOR ALL PURPOSES
NOTICE OF CASE MANAGEMENT CONFERENCE

PLEASE TAKE NOTICE, that the above-entitled case has been set for a
Case Management Conference on 07/31/17 at  8:30
in Department S26. You must appear at this hearing or your case may
be dismissed and monetary penalties may be imposed.

THIS CASE HAS BEEN ASSIGNED TO JUDGE DAVID COHN IN
DEPARTMENT S26 FOR ALL PURPOSES.

Your Joint Statement must be filed, directly in the Complex Litigation
Department, five (5) calendar days prior to the hearing.

TO THE PARTY SERVED: The setting of this date DOES NOT increase the
time you have to respond to the petition. The time for response is
clearly stated on the Summons.

Please see the Guidelines for the Complex Litigation Program for
further information. The guidelines may be found at the Court Website:
http://www.sb-court.org

A COPY OF THIS NOTICE MUST BE SERVED ON THE RESPONDENT
Nancy Eberhardt, Interim Court Executive Officer
Date: 05/17/17                              By: CUAUHTEMOC NUNEZ
-----------------------------------------------------------------
CERTIFICATE OF SERVICE
I am a Deputy Clerk of the Superior Court for the County of San
Bernardino at the above listed address. I am not a party to this
action and on the date and place shown below, I served a copy of the
above listed notice by:
( ) Enclosed in an envelope mailed to the interested party addressed
above, for collection and mailing this date, following ordinary
business practice.
( |) Enclosed in a sealed envelope, first class postage prepaid in the
U.S. mail at the location shown above, mailed to the interested party
and addressed as shown above, or as shown on the attached listing.
( ) A copy of this notice was given to the filing party at the
counter.
( ) A copy of this notice was placed in the bin located at this office
and identified as the location for the above law firm's collection of
file stamped documents.
DATE OF MAILING: 05/17/17
I declare under penalty of perjury that the foregoing is true and
correct. Executed on 05/17/17 at San Bernardino, CA  By: CUAUHTEMOC NUNEZ