**MAYALL HURLEY P.C.**
**WILLIAM J. GORHAM (SBN:  151773)**
wgorham@mayallaw.com
**ROBERT J. WASSERMAN (SBN:  258538)**
rwasserman@mayallaw.com
**NICHOLAS J. SCARDIGLI (SBN:  249947)**
nscardigli@mayallaw.com
**VLADIMIR J. KOZINA (SBN:  284645)**
vjkozina@mayallaw.com
**2453 Grand Canal Boulevard**
**Stockton, California 95207-8253**
**Telephone:  (209) 477-3833**
**Facsimile:  (209) 473-4818**

**ACKERMANN & TILAJEF, P.C.**
**Craig J. Ackermann (SBN:  229832)**
cja@ackermanntilajef.com
**1180 South Beverly Drive, Suite 610**
**Los Angeles, CA 90035**
**Telephone:  (310) 277-0614**
**Facsimile:  (310) 277-0635**

**Melmed Law Group P.C.**
**Jonathan Melmed (SBN:  290218)**
jm@melmedlaw.com
**1180 South Beverly Drive, Suite 610**
**Los Angeles, CA 90035**
**Telephone:  (310) 824-3828**
**Facsimile:  (310) 862-6851**

**Attorneys for Plaintiffs Curtis Markson, Mark McGeorge and the Putative Class**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CURTIS MARKSON and MARK MCGEORGE, individually and on behalf of the Putative Class,**<br><br>        **Plaintiff,**<br><br>vs.<br><br>**CRST International, Inc., CRST Expedited, Inc.; and DOES 1-100, inclusive,**<br><br>        **Defendants.** | **Case No.:**  5:17-cv-01261-VAP-SP<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR**<br><br>1.  **UNREASONABLE CHARGES AND PENALTIES ASSOCIATED WITH TRAINING FOR CDL LICENSES**<br>2.  **UNLAWFUL, UNFAIR OR FRAUDULENT BUSINESS PRACTICES**<br>3.  **VIOLATION OF LABOR CODE SECTIONS 2802**<br>4.  **VIOLATION OF LABOR CODE SECTIONS 201 & 202**<br>5.  **PRIVATE ATTORNEYS GENERAL ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Curtis Markson and Mark McGeorge and bring this Class Action on behalf of all other similarly situated individuals against CRST International, Inc., CRST Expedited, Inc., and Does 1 through 100.  Plaintiffs allege that, from at least four years prior to the filing of this action, CRST International, Inc. and CRST Expedited, Inc., and Does 1-100 have engaged in unlawful, unfair or fraudulent business practices.  These unlawful, unfair or fraudulent business practices include, but are not limited to a) knowingly using false and misleading advertising to induce Plaintiffs, Student Drivers and Drivers into entering their Pre-Employment Driver Training Agreement and Driver Employment Contract, b) utilizing the harsh terms of their Pre-Employment Driver Training Agreement and Driver Employment Contract to trap Plaintiffs, Student Drivers and Drivers in their employ and/or to penalize them for leaving, c) charging Plaintiffs, Student Drivers and Drivers more than they actually paid for their Driver Training Program, d) charging Plaintiffs, Student Drivers and Drivers more than they actually paid for DOT physicals and drug screens, transportation, lodging and other administrative fees, e) not giving Drivers credit for the reduced rate at which they were are paid,  and f) not giving Drivers credit for amounts repaid through payroll deductions.

## **PARTIES**

1. Curtis Markson ("Markson") is and at all times relevant herein was a resident of California.

2. Mark McGeorge ("McGeorge") is and at all times relevant herein was a resident of California.

3. CRST International, Inc. ("CRST International") is an Iowa Corporation and, at all times relevant herein, was conducting and transacting business in the State of California.

4. CRST Expedited, Inc. ("CRST Expedited") is an Iowa Corporation and, at all times relevant herein, was conducting and transacting business in the State of California.

5. CRST International, CRST Expedited and Does 1-100 are collectively referred to as Defendants.

6. Plaintiffs are not aware of the true names and capacities of the Defendants sued herein as Does 1 through 100, whether individual, corporate, associate, or otherwise and therefore

sues such Defendants by these fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.   Plaintiffs are informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiffs' injuries and damages herein alleged were legally caused by such Defendants.  Unless otherwise indicated, each Defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-Defendant.

7.       Plaintiffs informed and believes and thereupon alleges that at all times mentioned herein, each of the Defendants, including each Doe Defendant, was acting as the agent, servant, employee, partner and/or joint venturer of and was acting in concert with each of the remaining Defendants, including each Doe Defendant, in doing the things herein alleged, while at all times acting within the course and scope of such agency, service, employment partnership, joint venture and/or concert of action.  Each Defendant, in doing the acts alleged herein, was acting both individually and within the course and scope of such agency and/or employment, with the knowledge and/or consent of the remaining Defendants.

## JURISDICTION AND VENUE

8.       Venue is proper in this Court because a contract between the parties which is subject of this dispute was entered into in San Bernardino County, and said contract provides that any claim, litigation, or dispute arising from or related to said contract shall be litigated in San Bernardino.  See **Exhibit 1** [1].  Plaintiffs hereby demand a jury trial.

## GENERAL ALLEGATIONS

9.       CRST International is one of the nation's largest transportation companies, providing total transportation solutions and comprehensive logistics services to customers all over North America.  CRST International boast annual revenues exceeding $1 billion and the ability to operate with zero debt.

---

[1] Exhibits 1 - 5 are incorporated by this reference as though fully set forth herein.  Some exhibits have been reduced and/or redacted due to their size and content.

10.     CRST International has eight integrated operating companies that work together to span the transportation industry and deliver a seamless customer experience.  CRST International's operating companies include CRST Expedited, CRST Malone, Inc., CRST Logistics, Inc., CRST Dedicated Services, Inc., CRST Specialized Transportation, Inc., BESL Transfer Company, Pegasus Transportation, and Gardner Trucking.

11.     CRST International recruits individuals to obtain commercial drivers' licenses and drive for the company in print, over the radio, on television and on the internet.  CRST International touts a "successful, professional truck driving career" and invites individuals to select which of its operating companies they want to drive for.

12.     CRST International promises "job stability and job security," representing that their teams "average the most miles per truck in the industry."  Drivers are further promised "industry-leading pay," "a sign-on bonus," and "[m]edical coverage from Day One," "[a]ccident and disability insurance," "[p]aid vacations," "[f]ree live insurance" amongst a host of other benefits.

13.     As one of the nation's largest carriers, CRST International trains thousands of new drivers every year.  Interested individuals are offered the opportunity to earn their Commercial Driver's License in Cedar Rapids, Iowa or through one of driver training schools CRST International partners with throughout the country.

14.     With more than 3,500 drivers, CRST Expedited operates one of the industry's largest fleets of drivers.

15.     Individuals interested in driving for CRST Expedited are funneled to the website joincrst.com, a hotline or one of CRST Expedited's recruiters.

16.     Individuals interested in driving for CRST Expedited are then presented with two options:

> "Option 1:  100% sponsored training at an accredited school with one of the shortest employment commitments in the industry."
>
> Option 2:  $6,500 initial price gets you top-quality training, higher wages, and a competitive sign-on bonus."

17.     Once committed, individuals (referred to as "Student Drivers") are placed in CRST Expedited's Driver Training Program.

18.    CRST Expedited operates a training facility in Cedar Rapids, Iowa and partners with several other training schools throughout the country (referred to as the "Educational Facility").  Student Drivers who reside in California and some of its surrounding states are funneled to the Educational Facility known as the Advance School of Driving in Fontana, California.

19.    CRST Expedited's Driver Training Program consists of four phases:  Phase 1 consists of driver training at the Educational Facility; Phase 2 is CRST Expedited's orientation program held at a site selected by CRST Expedited; Phase 3 is CRST Expedited's finishing school consisting of hands on over-the-road driving training with one of CRST Expedited's lead drivers; and Phase 4 is CRST Expedited's professional development program, which consists of specialized class room training and a mentoring program conducted by Defendants' operations transition team.

20.    Once at an Educational Facility, Student Drivers are required to sign CRST Expedited's Pre-Employment Driver Training Agreement.

21.    A copy of the Pre-Employment Driver Training Agreement provided to and signed by McGeorge is attached hereto as **Exhibit 2**.

22.    Pursuant to CRST Expedited's Pre-Employment Driver Training Agreement, Student Drivers are advanced tuition as well as transportation, lodging and other expenses.  *Id*. at ¶ 7-11.

23.    As defined in the Pre-Employment Driving Training Agreement, Transportation Costs for Phase 1 means the costs incurred to transport Student Drivers via transportation arranged and authorized by Defendants from Student Drivers' homes to the Educational Facility and Transportation Costs for Phase 2 means the costs incurred to transport Student Drivers via transportation arranged and authorized by Defendants from the Educational Facility to the site where the orientation program takes place. *Id*. at ¶ 7.

24.    Similarly, Lodging Costs mean the hotel/motel rate charged for Student Drivers staying in rooms made available to them at a hotel or motel selected by CRST Expedited per an arrangement with the hotel/motel.  *Id*. at ¶ 8.

25.     Under the Pre-Employment Driving Training Agreement, if Student Drivers are dismissed or voluntarily withdraw from the Driver Training Program before commencing Phase 3, they must repay the all amounts advanced for tuition, lodging, and transportation, as well as their DOT physical and Drug Screen.  These amounts become immediately due and payable upon any dismissal, breach or withdrawal from the Driver Training Program.  If these amounts are not paid within thirty days, Student Drivers are also responsible for any and all costs incurred in collecting and enforcing the Pre-Employment Driver Training Agreement including, but not limited to, interest, attorneys' fees and costs.  *Id*. at ¶ 12, subsection b.

26.     Further, if, within the initial ten (10) month term of their employment, (a) they breach the Driver Employment Contract, or (b) are terminated for due cause, then Student Drivers will owe and immediately must pay to CRST Expedited (i) $6,500, plus (ii) the amounts advanced by CRST Expedited on their behalf for the DOT Physical and Drug Screen, lodging and transportation costs not yet repaid, plus (iii) interest commencing as of the first day of employment under the Driver Employment Contract.  *Id*. at ¶ 12, subsection e, (2).

27.     Under the Pre-Employment Driving Training Agreement, Phase 3 and Phase 4 are completed only if the Student Driver and CRST Expedited execute a Driver Employment Contract, and after the Student Driver successfully completes Phase 1 and Phase 2.  Once executed, Student Drivers become employees of CRST Expedited (referred to as "Drivers").

28.     A copy of the Driver Employment Contract provided to and signed by Markson is attached hereto as **Exhibit 1**.

29.     CRST Expedited's Driver Employment Contract is for a term of ten months ("Employment Term").

30.     During this time, Drivers may be terminated with or without Due Cause, by mutual agreement, or upon their death.  Due Cause is defined as Drivers' breach of the Driver Employment Contract or failure to satisfy or comply with any standards, requirements, or obligations set forth in the CRST Professional Driver's Handbook.  *Id*. at ¶ 4.

31.     Under the Driver Employment Contract, Drivers agree to reimburse CRST Expedited amounts "advanced on behalf of Employee, in accordance with the Pre-Employment

Driver Training Agreement, the payment of certain tuition, lodging, transportation, and other expenses and fees incurred by Employee in the course of Employee participating in the Driver Training Program. . .” *Id*. at ¶ 6.

32.    Specifically, Drivers agree to begin reimbursing CRST Expedited for the advances referenced above following their completion of Phase 3. *Id*. at ¶ 6, subsection a. Once qualified as a Company Driver, CRST Expedited begins deducting up to $40.00 per week from Drivers’ paycheck to repay the amounts advanced during Phase 1 of the Driver Training Program. *Id*. These deductions include the cost of their DOT Physical and Drug Screen and continue until Drivers have re-paid the entire principal amount, plus interest.

33.    Further, in the event that Drivers breach the Driver Employment Contract and/or are terminated for Due Cause (something judged exclusively by CRST Expedited), they must immediately pay CRST Expedited (i) $6,500, plus (ii) the amounts advanced for DOT Physical and Drug Screens, lodging and transportation, plus (iii) interest. Again, Drivers are also responsible for any and all costs incurred by CRST Expedited in collecting and enforcing these amounts. *Id*. at ¶ 6, subsection b.

34.    After a short stint with Defendants in 2012, Markson decided to return in Fall of 2016 and was required to participate in the Driver Training Program.

35.    During Phase 1 of his training, Markson entered into a Pre-Employment Driver Training Agreement with CRST Expedited.

36.    At the completion of Phase 2, Markson and the other Student Drivers sign CRST Expedited’s Driver Employment Contact (**Exhibit 1**, *supra*).

37.    After he completed the training and started driving, Markson quickly discovered that he was not making anywhere near the money he was led to believe he would make through Defendants’ representations.

38.    Defendants also deducted the cost of his Drug Screen from his pay.

39.    In or around February 2017, Markson secured employment with another trucking company. On March 2, 2017, Markson was charged $6,500 against his earned wages. The charge

1    was coded "LS" which stands for "SCHOOL CONT. BALANCE". Defendants employed a

2    collections agency to pursue the unpaid amount.

3         40.    Markson did not receive any credit against the $6,500 for the portion of the

4    Employment Term that he worked for Defendants or the reduced rate at which he was paid.

5         41.    McGeorge became interested in a career in truck driving in Fall of 2016. After

6    submitting his resume online, one of Defendants' recruiters contacted McGeorge. McGeorge was

7    told that he would not be charged for his DOT Physical or Drug Screen, that he would only have to

8    pay back $40 per week for the first ten months and that, if he stayed past ten months, the remainder

9    of his debt would be forgiven.

10        42.    When he reported to the Educational Facility, McGeorge found things very different

11   than previously represented. McGeorge was apprised of additional amounts that he and the other

12   Student Drivers would be charged for including their DOT Physical, Drug Screen, and lodging.

13        43.    Notwithstanding the foregoing, McGeorge signed CRST Expedited's Pre-

14   Employment Driver Training Agreement (**Exhibit 2**) and began their Driver Training Program.

15        44.    McGeorge and other Student Drivers received very little one-on-one training and

16   even less time behind the wheel. When behind-the-wheel training was provided, McGeorge and

17   the other Student Drivers spent the majority of their time waiting for their turn rather than receiving

18   actual instruction. Throughout the entire Driver Training Program, McGeorge received only

19   approximately 5-6 hours of actual behind-the-wheel training.

20        45.    After completing the first two phases of CRST Expedited's Driver Training

21   Program, McGeorge executed CRST Expedited's Driver Employment Contract, was paired with a

22   trainer and sent off on his over-the-road training.

23        46.    Thereafter, CRST Expedited began making deductions from his already meager pay.

24   These deductions included a "PHYS/DRUG SCREEN" charge (associated with the amounts

25   advanced under the Pre-Employment Driver Training Agreement), a "HOUSING FEE" (associated

26   with the lodging he received during Defendants' Driver Training Program, and an unidentified

27   deduction coded simply "PE".

28

47.     Although he had already seen $75 deducted from his wages for "HOUSING FEE", and although he only incurred $330 in housing costs during the Driver Training Program (see **Exhibit 3**), McGeorge was charged a $420 "HOUSING FEE" on his February 28, 2017 wage statement.

48.     CRST Expedited's other Drivers were subjected to similar unlawful deductions and chargebacks.  These included fees and costs associated with pre-employment medical and/or physical exams, fees as well as other miscellaneous items.

49.     Because he was not making the money represented by Defendants to induce him into their employment, McGeorge also left his employment with CRST Expedited.

50.     When McGeorge left his employment, Defendants unlawfully deducted from his final paycheck all of the wages he had earned that pay period and applied it to the $6,500 fee assessed against him.  **Exhibit 3.**

51.     This deduction from McGeorge's pay was pursuant to Defendants longstanding and uniform policy of deducting wages from the final paychecks of Drivers and Student Drivers who did not complete the Employment Term.

52.     As it did with Markson, Defendants have retained a firm to collect the amounts purportedly owed to them.  **Exhibit 4**.

53.     Defendants use the Pre-Employment Driver Training Agreement and Driver Employment Contract as an illegal means to manipulate and control the Student Drivers and Drivers.  Defendants' scheme first involves inducing individuals into entering the contracts by knowingly making false and misleading representations about what employment will entail as well as intentionally failing to disclose relevant information such as high turnover rates and low average pay/miles amongst Student Drivers and Drivers.  Once hooked, Defendants then use the harsh terms of the Pre-Employment Driver Training Agreement and Driver Employment Contract to trap Student Drivers and Drivers in their employ, and to penalize those that leave.

54.     The Pre-Employment Driver Training Agreement and Driver Employment Contract are both procedurally and substantively unconscionable.

55.     The contracts are presented to Student Drivers on a take-it-or-leave-it basis, often after Student Drivers have already invested significant time and effort into the Driver Training Program.  Worse, Student Drivers who do not complete Phase 1 and Phase 2 must immediately pay the amounts advanced for their tuition, lodging, transportation, DOT Physical and Drug screen, and other administrative fees.  Similarly, Drivers who do not complete Phase 3, Phase 4 and the entire 10-month contract, must immediately pay the sum of $6,500, plus the amounts advanced for their DOT Physical and Drug Screen, transportation, lodging and other administrative fees not already deducted from their pay.

56.     The $6,500 penalty charged to Drivers who do not complete the 10-month contract is unreasonable, not representative of the actual cost of Defendants' Driver Training Program or the value provided to the Drivers, and is intended to discourage Drivers from ending their employment with Defendants and/or to penalize those that do.

57.     On information and belief, $6,500 penalty charged to Drivers who do not complete the 10-month contract also, or alternatively, is an attempt by Defendants to impermissibly pass business expenses onto Drivers.

58.     The costs charged to Student Drivers and Drivers for their DOT Physical and Drug Screen and other administrative fees are unreasonable, not representative of their actual cost to Defendants or the value provided to the Drivers, and are intended to discourage Drivers from ending their employment with Defendants and/or to penalize those that do.

59.     The costs charged to Student Drivers and Drivers for their DOT Physical and Drug Screen and other administrative fees also constitute unlawful chargebacks and deductions under Labor Code sections 221, 222.5, 224, 231 and 2802.

60.     Because Defendants willfully make unlawful deductions from Student Drivers' and Drivers' wages, Defendants have willfully failed to pay its Drivers and Student Drivers all wages earned and unpaid at resignation or termination, in violation of Labor Code sections 201 and 202.

61.     Defendants recoup all or part of the amounts advanced on behalf of the Student Drivers and Drivers during Phase 3 of the Driver Training Program and the remainder of their 10-month contract via reduced per mile rates.  **Exhibit 5**.

62.     Notwithstanding the foregoing, Drivers whose employment ended before the completion of their 10-month contract received no credit for the same and remained liable for the entire $6,500 as well as the amounts advanced for their DOT Physical and Drug Screen, transportation, lodging and other administrative fees not already deducted from their pay.

63.     During the four years prior to the filing of this action, Defendants had agreements with truck driving schools to pay significantly less than $6,500 tuition for each Student Driver who participates in the Driver Training Program.  Defendants paid Advance School of Trucking just $1,500 during the pertinent time period.  On information and belief, the actual and reasonable cost of the trucking school to Defendants is somewhere between $2,000 and $2,500.

64.     Defendants did not inform Plaintiffs, Student Drivers or Drivers, in the Pre-Employment Driver Training Agreement or Driver Employment Contract or otherwise, that they actually paid significantly less than the $6,500 purportedly advanced to them for their tuition.

65.     Defendants did not inform Plaintiffs, Student Drivers or Drivers, in the Pre-Employment Driver Training Agreement or Driver Employment Contract or otherwise, that the $6,500 figure was set without regard to the actual costs incurred by Defendants or, alternatively, so as to impermissibly pass costs and fees for which Defendants are legally responsible onto Drivers.

66.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the $6,500 constitute an illegal penalty clause or illegal liquidated damages clause under Civil Code section 1671.

67.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the $6,500 tuition also constitute an invalid and unenforceable penalty in violation of Civil Code section 1671, and are, therefore, an unlawful and unfair business practice because, inter alia, they purport to require the repayment of more than the actual cost of the tuition paid, which sum is not characterized as liquidated damages, and because Student Driver and Drivers whose employment ends before the completion of their 10-month contract are not given credit for tuition costs already paid back through Defendants' payment of reduced mileage rates and/or the deductions from their pay.

68.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the $6,500 constitute unlawful deductions and chargebacks in violation of Labor Code sections 221, 222.5, 224, 231 and 2802.

69.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the amounts advanced for DOT Physicals and Drug screens and other administrative fees constitute unlawful deductions and chargebacks in violation of Labor Code sections 221, 222.5, 224, 231 and 2802.

70.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the amounts advanced by CRST Expedited for DOT Physicals and Drug Screens, transportation, lodging and other administrative fees constitute an invalid and unenforceable penalty in violation of Civil Code section 1671, and are, therefore, an unlawful and unfair business practice because, inter alia, they purport to require the repayment of more than the actual cost of such services/goods, which sum is not characterized as liquidated damages, and because Student Driver and Drivers whose employment ends before the completion of their 10-month contract are not given credit for amounts already paid back through Defendants' payment of reduced mileage rates and/or the deductions from their pay.

71.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of the amounts advanced by CRST Expedited for DOT Physicals and Drug Screens and other administrative fees constitute unlawful deductions and chargebacks in violation of Labor Code sections 221, 222.5, 224, 231 and 2802, and are, therefore, an unlawful and unfair business practice because, inter alia, they purport to require the repayment of costs and fees not lawfully passed along to drivers.

72.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of $6,500 in addition to the amounts advanced for DOT Physicals and Drug Screens, transportation, lodging and other administrative fees also constitute a deceptive business practice because the agreements imply Defendants actually paid these amounts, and Defendants did not inform Plaintiffs, Student Drivers and Drivers that the actual costs were significantly less.

73.     The provisions of the Pre-Employment Driver Training Agreement and Driver Employment Contract requiring payment of $6,500 in addition to the amounts advanced for DOT Physicals and Drug Screens, transportation, lodging and other administrative fees also constitute a deceptive business practice because the agreements imply Plaintiffs, Student Drivers and Drivers are permissibly charged for these items.

74.     From at least four years prior to the filing of this action, Defendants have adopted and employed unfair business practices.  These unfair business practices included knowingly using false and misleading advertising to induce Plaintiffs, Student Drivers and Drivers into entering the Pre-Employment Driver Training Agreement and Driver Employment Contract, utilizing the harsh terms of the Pre-Employment Driver Training Agreement and Driver Employment Contract to trap them in their employ and/or penalize them for leaving, charging Plaintiffs, Student Drivers and Drivers more than they actually paid for their Driver Training Program, impermissibly charging Plaintiffs, Student Drivers and Drivers for their DOT Physicals and Drug Screens, and other costs and administrative fees not lawfully passed on to them, not giving Drivers credit for the reduced rate at which Plaintiffs and Drivers were are paid, making illegal deductions from their pay, and not giving drivers credit for amounts repaid through payroll deductions.

75.     On February 1, 2018, Plaintiffs provided written notice to the Labor and Workforce Development Agency ("LWDA") and Defendants regarding the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support those alleged violations.

76.     As of this amendment, more than 65 calendar days after Plaintiffs' written notice, the LWDA has not provided written notice that it intends to investigate their allegations. Accordingly, Plaintiffs have satisfied the administrative prerequisites under Labor Code section 2699.3 to bring a civil action to recover penalties against Defendants, in addition to other remedies, for violations of the California Labor Code.

/ / /

**CLASS ACTION ALLEGATIONS**

77.     Plaintiffs seek to maintain this action as a class action as to the First through Fourth causes of action.  Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure.  The putative class which Plaintiffs seek to represent consists of the following:

> All individuals who signed a Pre-Employment Driver Training Agreement and/or Driver Employment Contract with Defendant CRST Expedited, Inc. and who participated in CRST Expedited, Inc.'s Driver Training Program in California and were charged for their DOT Physical and Drug Screen between May 12, 2013 and the date of a Court Order certifying the class (the "DOT Physical and Drug Screen Class"); and

> All individuals who signed a Driver Employment Contract with Defendant CRST Expedited, Inc. and who participated in CRST Expedited, Inc.'s Driver Training Program in California but failed to complete the contractually-required 10-month employment term with CRST Expedited, Inc. and were charged $6,500 between May 12, 2013 through the date of a court order certifying the Class (the "Class" or "Class Members") (the "Driver Class").

The DOT Physical and Drug Screen Class and Driver Class are referred to collectively as the Class or Class Members.  Plaintiff reserves the right under Rule 3.765, California Rules of Court, to amend or modify the Class description with greater specificity or further division into subclasses or limitation to particular issues.

78.     The class of persons is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action is a benefit to the parties and to the Court.  Plaintiff is informed and believes, and based thereon alleges, that Defendants employ more than 2,000 employees who satisfy the class definition.  Although the exact number and identity of class members is not presently known, they can be identified in Defendants' records through coordinated discovery pursuant to this class action.

79.     This action may be maintained as a class pursuant Code of Civil Procedure section 382 because the questions of law and fact which are common to class members clearly predominate over any questions affecting only individual members and because a class action is superior to other available methods for adjudicating the controversy.

80.     There are numerous common questions of law and fact arising out of Defendants' conduct.  This class action focuses on Defendants' a) charging Class Members more than they

actually paid for their Driver Training Program, b) charging Class members more than they actually paid for DOT physicals and drug screens, transportation, lodging and other administrative fees, and c) not giving Class Members credit for the reduced rate at which they are paid and/or not amounts repaid through payroll deductions.

81.   Furthermore, common questions of fact and law predominate over any questions affecting only individual members of the class.  The predominating common or class-wide questions of law and fact include the following:

a.   Whether the Pre-Employment Driver Training Agreement was procedurally and substantively unconscionable;

b.   Whether the Driver Employment Contract was procedurally and substantively unconscionable;

c.   Whether Defendants charged Class Members more than they actually paid for their Driver Training Program;

d.   Whether Defendants failed to credit Drivers for the reduced rate at which they were paid;

e.   Whether Defendants failed to give Drivers credit for amounts repaid through payroll deductions;

f.   Whether Defendants utilized the harsh terms of the Pre-Employment Driver Training Agreement and Driver Employment Contract to trap Class Members in their employ and/or penalize them for leaving;

g.   Whether Defendants impermissibly charged Class members for their DOT Physicals and Drug screens and other fees and costs;

h.   Whether Defendants impermissibly deducted wages from Class members' final paychecks;

i.   Whether Defendants willfully withheld wages due and owing to Class members at the time of termination or within 72 hours of resignation;

j.   Whether the alleged violations constitute unfair business practices;

k.   Whether the Class is entitled to injunctive relief; and

1          1.      Whether the Class is entitled civil and statutory penalties and/or
2                  restitutionary relief, and the amount of the same.

3          82.     Plaintiffs' claims are typical of the claims of the members of the Class as a whole,
4    all of whom have sustained and/or will sustain damage and injury as a proximate and/or legal result
5    of the alleged violations of Defendants.  Plaintiffs' claims are typical of those of the Class because
6    Defendants subjected Plaintiffs and each member of the Class to the same violations alleged
7    herein.

8          83.     The defenses of Defendants, to the extent that such defenses apply, are applicable
9    generally to the whole Class and are not distinguishable as to the proposed class members.

10         84.     Plaintiffs will fairly and adequately protect the interests of all members of the Class,
11   and has retained attorneys with extensive experience in litigation, including class and
12   representative actions.  Plaintiff has no interests that conflict with those of the Class.  Plaintiffs are
13   able to fairly and adequately protect the interests of all members of the class because it is in their
14   best interest to prosecute the claims alleged herein in order to obtain the full compensation due
15   herself and the other class members.

16         85.     A class action is superior to any other method available for fairly and efficiently
17   adjudicating the controversy because 1) joinder of individual class members is not practical, 2)
18   litigating the claims of individual class members would be unnecessarily costly and burdensome
19   and would deter individual claims, 3) litigating the claims of individual class members would
20   create a risk of inconsistent or varying adjudications that would establish incompatible standards of
21   conduct for Defendants, 4) class members still working for Defendants may be fearful of retaliation
22   if they were to bring individual claims, 5) class members would be discouraged from pursuing
23   individual claims because the damages available to them are relatively small, and 6) public policy
24   encourages the use of the class actions to enforce employment laws and protect individuals who, by
25   virtue of their subordinate position, are particularly vulnerable.

26         86.     Judicial economy will be served by maintenance of this lawsuit as a class action.  To
27   process numerous virtually identical individual cases will significantly increase the expense on the
28   Court, the class members and Defendants, all while unnecessarily delaying the resolution of this

matter. There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court, and doing so will provide multiple benefits to the litigating parties including, but not limited to, efficiency, economy, and uniform adjudication with consistent results.

87. Notice of a certified class action and any result or resolution of the litigation can be provided to class members by mail, email, publication, or such other methods of notice as deemed appropriate by the Court.

**FIRST CAUSE OF ACTION**
**Unreasonable Charges or Penalties Associated with Training Individuals**
**to Obtain their CDL Truck Driver Licenses**
**[Cal. Civil Code § 1671 and Code of Civil Procedure § 1060]**
**On behalf of Plaintiffs and the Student Driver Subclass**

88. Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

89. California Civil Code section 1671 provides that "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made".

90. Under California Code of Civil Procedure section 1060, any person interested in a written instrument, . . ., or under a contract, . . ., may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties . . , including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a biding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought.

91. As set forth above, Defendants' Pre-Employment Driver Training Agreement and Driver Employment Contract are procedurally and substantively unconscionable. They

unreasonably call for the repayment of amounts greater than those actually expended by Defendants and do so without a) apprising Class Members of the amounts actually expended or b) accounting for amounts collected from the Class.  The clauses constitute unreasonable penalties which are injurious to Plaintiffs and the Class Members.

92.  Defendant's course of conduct, act and practice in violation of the California law mentioned above constitutes a violation of section 1671 of the California Civil Code.

93.  Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement is an illegal liquidated damages clause in violation of Civil Code section 1671.

94.  Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that Paragraph 6, subsection b, of the Driver Employment Contract is an illegal liquidated damages clause in violation of Civil Code section 1671.

95.  Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement is procedurally and substantively unconscionable and therefore unenforceable as against Plaintiff's and the other Class Members.

96.  Pursuant to Code of Civil Procedure section 1060, Plaintiffs seek a declaration that Paragraph 6, subsection b, of the Driver Employment Contract is procedurally and substantively unconscionable and therefore unenforceable as against Plaintiff's and the other Class Members.

97.  The harm to Plaintiffs and the Student Driver Subclass in being dissuaded from leaving their employment with Defendants before the completion of their ten-month contract and/or being penalized for the same outweighs the utility, if any, of Defendants' policies and practices.

98.  Wherefore, Plaintiffs and the other Class Members have been injured as set forth above and request relief as hereafter provided.

**SECOND CAUSE OF ACTION**
**Unlawful, Unfair, or Fraudulent Business Practices**
**[Cal. Bus. and Prof. Code § 17200 *et seq*.]**
**On Behalf of Plaintiffs and the Class**

99.     Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

100.     Section 17200 of the California Business and Professions Code prohibits any unlawful, unfair, or fraudulent business practices.

101.     Section 90.5(a) of the Labor Code states that it is the public policy of California to enforce vigorously minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

102.     From at least four years prior to the filing of this action, through the actions and/or omissions alleged herein, Defendants have engaged in unfair competition within the meaning of section 17200 of the California Business and Professions Code.  These unfair business practices included knowingly using false and misleading advertising to induce Plaintiffs, Student Drivers and Drivers into entering the Pre-Employment Driver Training Agreement and Driver Employment Contract, utilizing the harsh terms of the Pre-Employment Driver Training Agreement and Driver Employment Contract to trap them in their employ and/or penalize them for leaving, charging Plaintiffs, Student Drivers and Drivers more than they actually paid for their trucking school and their Driver Training Program, charging Plaintiffs, Student Drivers and Drivers more than they actually paid for DOT physicals and drug screens, transportation, lodging and other administrative fees, making illegal deductions from their pay, not giving Drivers credit for the reduced rate at which they are paid, not giving drivers credit for amounts repaid through payroll deductions, seeking to collect liquidated damages based upon unenforceable and illegal clauses (Paragraph 12, subsection e., (2), of the Pre-Employment Driver Training Agreement and Paragraph 6, subsection b, of the Driver Employment Contract), and holding on their books as debt the difference between the actual cost to Defendants of the trucking school, DOT physicals and drug screens, transportation, lodging and other administrative fees, and the unconscionable amount they sought to collect over and above this cost.

103.     The harm to Plaintiffs and the other Class Members outweighs the utility, if any, of Defendants' policies and practices. Therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of section 17200 of the California Business and Professions Code.

104.     Wherefore, Plaintiffs and the other Class Members have been injured as set forth above and request relief as hereafter provided.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA LABOR CODE SECTION 2802**
**On Behalf of Plaintiffs and the Class**

105.     Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

106.     Pursuant to Labor Code section 2802(a), "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

107.     As set forth above, Defendants failed to indemnify Plaintiffs and the putative class for all necessary expenditures or losses incurred in direct consequence of the discharge of their job duties.

108.     Wherefore, Plaintiffs and the other Class Members have been injured as set forth above and request relief as hereafter provided.

/ / /

/ / /

**FOURTH CAUSE OF ACTION**
**VIOLATION OF LABOR CODE SECTIONS 201 & 202**
**On Behalf of Plaintiffs and the Class**

109.     Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

110.     California Labor Code section 201 provides that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

111.     California Labor Code section 202 requires an employer to pay an employee all earned wages within 72 hours of the employee quitting his or her employment, or immediately at the time of quitting if the employee has given 72 hours previous notice of his or her intention to quit.

112.     As set forth above, Plaintiff and the other Class Members were not timely paid all of their earned but unpaid wages when their employment with Defendants ended.

113.     Wherefore, Plaintiff and the other Class Members have been injured as set forth above and request relief as hereafter provided.

**FIFTH CAUSE OF ACTION**
**Private Attorneys General Act**
**[Cal. Lab. Code § 2698, *et seq*.]**
**On Behalf of Plaintiffs, the State of California, the Other Aggrieved Employees**

114.     Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

115.     Pursuant to Labor Code § 2699(a), any provision of the Labor Code which provides for a civil penalty to be assessed and collected by the LWDA for violations of the Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures outlined in Labor Code § 2699.3.

116.     Plaintiffs were employed by Defendants and the alleged violations were committed against them during their time of employment.  Plaintiffs are therefore aggrieved employees as defined by Labor Code § 2699(c).  Other current and former employees are also aggrieved

employees in that one or more of the alleged violations were also committed against them during their time of employment with Defendants.

117.     Pursuant to Labor Code § 2699(f), the civil penalty recoverable in a PAGA action is that which is provided for by the Labor Code or, where no civil penalty is specifically provided, one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

118.     Pursuant to California Labor Code § 2699(g), an aggrieved employee may recover the civil penalty on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed.  Furthermore, any employee who prevails in any such action shall be entitled to an award of reasonable attorney's fees and costs.

119.     Wherefore, Plaintiffs and the other aggrieved employees have been damaged as set forth above and request relief as hereafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

**As to the First through Fourth Causes of Action:**

1.     That this Court certify the Class identified in Paragraph 77;

2.     That this Court certify Plaintiffs as the representatives of the Class identified in Paragraph 77;

3.     That this court award compensatory damages, including but not limited to wages unlawfully deducted;

4.     That this court award statutory penalties pursuant to Labor Code section 203;

5.     That this court award restitutionary relief to Plaintiffs and the members of the Class including, but not limited to, all monies which were unlawfully withheld or collected and for such orders or judgments as may be necessary to restore to the Class any monies or property which Defendants have acquired by means of their unlawful or unfair business practices, including all amounts paid and debts purportedly owed pursuant to Paragraph 12, subsection e., (2), of the Pre-

1   Employment Driver Training Agreement and Paragraph 6, subsection b, of the

2   Driver Employment Contract;

3   6.   For injunctive relief, including that available under Business and Professions Code

4   Section 17203, prohibiting Defendants from continuing their unlawful and unfair

5   business practices;

6   7.   For declaratory relief, including a declaration that Paragraph 12, subsection e., (2),

7   of the Pre-Employment Driver Training Agreement and Paragraph 6, subsection b,

8   of the Driver Employment Contract and are illegal liquidated damages clauses in

9   violation of Civil Code section 1671, and that all amounts paid and debts

10   purportedly owed pursuant thereto declared null, void and uncollectable;

11   8.   For declaratory relief, including a declaration that Paragraph 12, subsection e., (2),

12   of the Pre-Employment Driver Training Agreement and Paragraph 6, subsection b,

13   of the Driver Employment Contract procedurally and substantively unconscionable

14   and therefore unenforceable;

15   9.   That this Court award attorneys' fees and costs, including those available under

16   Code of Civil Procedure section 1021.5 and Labor Code sections 218.5 and 2802(c);

17   10.   That this Court award prejudgment and post-judgment interest according to any

18   applicable provision of law or as otherwise permitted by law; and

19   11.   Such other and further relief as the court deems just and proper.

20   **As to the Fifth Cause of Action:**

21   1.   For civil penalties, including but not limited to those available under Labor Code

22   sections 225.5 and 2699(f);

23   2.   For statutory attorneys' fees and costs, including but not limited to those available

24   under Labor Code section 2699(g);

25   3.   For prejudgment and post-judgment interest according to any applicable provision

26   of law or as otherwise permitted by law, including those available under Civil Code

27   sections 3287(a) and 3289(b), and Labor Code section 218.6; and

28   4.   For such other and further relief as the court deems just and proper.

**DATED:**  April 30, 2018                    **MAYALL HURLEY P.C.**

By____/s/ Robert J. Wasserman_____
    ROBERT J. WASSERMAN
    WILLIAM J. GORHAM
    NICHOLAS J. SCARDIGLI
    VLADIMIR J. KOZINA
    Counsel for Plaintiffs and the Putative Class

**DATED:**  April 30, 2018                    **ACKERMANN & TILAJEF P.C.**

By____/s/  Craig J. Ackermann_____
    CRAIG J. ACKERMANN
    Counsel for Plaintiffs and the Putative Class

**DATED:**  April 30, 2018                    **MELMED LAW GROUP P.C.**

By____/s/  Jonathan Melmed_____
    JONATHAN MELMED
    Counsel for Plaintiffs and the Putative Class

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*