UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS MARKSON et al.,<br><br>　　Plaintiffs,<br><br>v.<br><br>CRST INTERNATIONAL, INC. et al.,<br><br>　　Defendants. | Case No. 5:17-cv-01261-SB-SP<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH C.R. ENGLAND AND CRST [DKT. NO. 694] |

　　Plaintiffs Curtis Markson, Mark McGeorge, Clois McClendon, and Eric Clark move for preliminary approval of their class action settlements with the remaining Defendants in this case—CRST International, Inc. and CRST Expedited, Inc. (together, CRST) and C.R. England, Inc. (CRE).  Dkt. Nos. 694 (motion), 697 (supplement in response to Court's October 18 order), 705 (post-hearing supplement).  The Court held a hearing on the motion on October 28, 2022, and no parties or class members objected to preliminary approval.  For largely the same reasons stated in its orders preliminarily and finally approving the earlier class settlements in this case, the Court concludes that preliminary approval is appropriate and grants the motion.

I.

　　This case has been extensively litigated for more than five years.  The Court has previously described Plaintiffs' allegations and the case's history in depth, including in its order denying Plaintiffs' motions for class certification.  Dkt. No. 561.  Briefly, Plaintiffs worked as truck drivers for some Defendants and allege that Defendants conspired to restrain compensation among themselves by refusing to hire employees who remain "under contract" with another trucking company, in

1

violation of California and federal antitrust law. Plaintiffs also allege various violations of California law against CRST. Specifically, Plaintiffs' Fourth Amended Complaint (4AC) alleges claims against all Defendants for (1) violation of the Sherman Act, 15 U.S.C. § 1, and (2) violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720; and against CRST for (3) unreasonable liquidated damages clause in violation of Cal. Civil Code § 1671; (4) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 16600 and 17200; (5) failure to indemnify necessary expenditures in violation of Cal. Labor Code § 2802; (6) failure to pay earned wages in violation of Cal. Labor Code §§ 201 and 202; and (7) civil penalties under the California Private Attorneys General Act, Cal. Lab. Code § 2699 (PAGA). Dkt. No. 228.

In a series of settlements, Plaintiffs resolved their claims with all Defendants other than CRE and CRST in exchange for a total settlement fund of $9.75 million (from which administrative fees, attorney's fees and expenses, and incentive awards for the named Plaintiffs were deducted), along with non-monetary relief. The Court approved those settlements and entered a final judgment as to the settling Defendants. Dkt. Nos. 681, 688. After CRE and CRST moved for summary judgment but before the Court ruled on the motion, Plaintiffs reached separate class settlement agreements with CRE and CRST, which they now ask the Court to preliminarily approve. Dkt. No. 694.

Under the terms of the settlement agreements, CRE and CRST agree, in exchange for release of the claims against them, to make non-reversionary payments of $925,000 and $1,200,000, respectively. Dkt. No. 694-2 at 18–49 (CRE Settlement Agreement), 51–80 (CRST Settlement Agreement). From these gross settlement amounts, the parties ask the Court to preliminarily approve the following deductions: (1) service awards of up to $10,000 ($5,000 from CRE and $5,000 from CRST) for each named Plaintiff; (2) payment to Plaintiffs' counsel of up to one fourth of the value of the settlement,[1] plus reimbursement of up to $500,000 ($250,000 from each settlement) of the litigation costs incurred in this case;[2] (3) all administrative fees incurred in administering class notice and the

---

[1] The settlement agreements contemplate that Plaintiffs may request "an award of attorneys' fees not in excess of one-third of the benefits created for the Settlement Class," Dkt. No. 694-2 at 36, 73, but Plaintiffs have requested only up to 25% of the settlement's value.

[2] The Court already awarded reimbursement of the overwhelming majority of the costs incurred by Plaintiffs' counsel in this litigation—more than $2.7 million.

settlement, estimated at approximately $400,000, divided evenly between the two settlements, and (4) as to the CRST settlement only, a PAGA payment of $37,500 to the California Labor and Workforce Development Agency (LWDA).

The settlement agreements also provide non-monetary relief to Plaintiffs, including that CRST and CRE (1) will not send "under contract" letters to other Defendants concerning certain class members, including those who were involuntarily terminated; (2) will not sue any of the Defendants for hiring any class member based on his or her "under contract" status, and (3) will not refuse to hire based solely on "under contract" status a driver involuntarily terminated by another carrier, except where such hiring is prohibited by a valid non-compete obligation.

## II.

### A.

Plaintiffs seek provisional certification of three classes and subclasses. First, the CRE Settlement Class is defined as:

> [A]ll current and former drivers "Under Contract" . . . as motor vehicle carrier drivers with CRST International, Inc., CRST Expedited, Inc., C.R. England, Inc., Western Express, Inc., Schneider National Carriers, Inc., Southern Refrigerated Transport, Inc., Covenant Transport, Inc., Paschall Truck Lines, Inc., and Stevens Transport, Inc., at any time from May 15, 2013 through April 1, 2022.[3]

Dkt. No. 694-2 at 21. "Under Contract" includes:

> individuals who executed an agreement with a Defendant in which the person agreed, and became obligated to work, for that Defendant for a specified period of time in return for a commercial driver's license education or other training provided by, funded by, or reimbursed by

---

[3] The settlement agreements identified April 1, 2022 as the end date for the CRE class period and April 6, 2022 as the end date for the CRST subclasses, and the initial proposed class notices used both dates inconsistently. The parties have now agreed to use April 1, 2022 as the end date for all classes. Dkt. No. 705 at 2–3.

>that Defendant and who was employed by that Defendant pursuant to that agreement at any time between May 15, 2013 and April 1, 2022.

*Id*. at 22.

The definition of the CRST Antitrust Subclass is identical to the definition of the CRE Settlement Class, and there are minor differences of phrasing in the definition of "Under Contract." *Id*. at 54–55.  Plaintiffs' counsel explained in connection with the previous settlements that similar differences in phrasing were immaterial and merely accounted for variations in the Defendant's training programs and contracts with their drivers.

Finally, the CRST Labor Code Subclass is defined as:

>all persons who (1) signed a Pre-Employment Driver Training Agreement and/or Driver Employment Contract with the CRST Defendants, (2) participated in the CRST Defendants' Driver Training Program in California, and (3) were charged for their DOT physical, DOT drug screening, administrative fees, and/or a contract fee after failing to complete their contractually-required 8- to 10-month employment term, at any time between May 15, 2013 through April [1], 2022.

*Id*. at 54.

To be certified, a class action must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and must also meet the requirements for one of the three types of class actions specified in Rule 23(b).  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  The criteria are applied differently depending on whether the class is being certified for litigation or settlement.  *Id*.  For example, when certifying a settlement class, concerns about manageability at trial are not implicated, but a district court must give heightened attention to the protecting the interests of absent class members.  *Id*. at 556–57.

The Court has already addressed these requirements at length in connection with Plaintiffs' antitrust claims, both in its order denying class certification (which found that Plaintiffs had satisfied the requirements of Rule 23(a)) and in its approval of the prior settlements.  For the same reasons the Court explained in pages 5–8 of its February 24, 2022 preliminary approval order, Dkt. No. 562,

which apply equally here, the Court preliminarily finds that the CRE Settlement Class and the CRST Antitrust Subclass are ascertainable; that they satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a); and that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," as required under Rule 23(b)(3).

    The Court also preliminarily finds that the CRST Labor Code Subclass satisfies the requirements of Rule 23.  The Labor Code Subclass, which consists of more than 4,750 individuals, is so numerous that joinder of all members would be impracticable.  Plaintiffs' state law claims raise several common legal questions about the application of various statutory provisions to the deductions from class members' pay that are challenged here.  The named Plaintiffs' claims appear to be typical of the class; the Court is unaware of any conflicts of interest; and Plaintiffs have prosecuted this suit vigorously.[4]  Finally, the Court is persuaded that the common questions of law about the proper interpretation and application of the statutory provisions on which Plaintiffs rely, which the Court analyzed carefully in connection with CRST's summary judgment motion, predominate over individual issues.  Especially given the relatively small recoveries available to individual class members, the Court finds that a class action is superior to other available methods of adjudicating the controversy.  Accordingly, the Court finds that the CRST Labor Code Subclass should be preliminarily certified for settlement purposes under Rule 23(a) and (b)(3).

---

[4] The Court denied class certification as to Plaintiffs' Labor Code claims because it found that a central issue for the class would be whether the 2021 *Montoya* settlement released the class members' claims and "when the time comes to make that decision, Markson, McGeorge, and McClendon will not be typical or adequate representatives to make arguments about the validity and effect of the *Montoya* release because they—unlike virtually all of the absent class members—opted out of the settlement and have no stake in its application here." Dkt. No. 561 at 9–10. In light of the parties' settlement, the affirmative defense of release is no longer at issue, and the statutory violations alleged by Plaintiffs are typical of the class. Moreover, absent class members are not prejudiced by being represented by named Plaintiffs whose claims are stronger because they opted out of the *Montoya* settlement.

The Court also finds as to all settlement classes and subclasses that Plaintiffs' counsel adequately represent the class members and should be appointed class counsel under Rule 23(g).

B.

The Court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). In making such a determination, courts generally consider factors including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Considering these and other factors, the Court finds at this stage that the settlements appear fair, reasonable, and appropriate. The parties reached the settlements after significant arm's length negotiations with an experienced third-party mediator. *See In re First Capital Holdings Corp. Financial Prods.*, No. MDL 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length"). The settlement follows more than five years of litigation with CRST and more than four years of litigation with CRE. Discovery has been extensive, including more than thirty depositions and review of hundreds of thousands of documents, and the parties' abundant motion practice has included motions to dismiss, motions for class certification, and a motion for summary judgment. All parties are represented by experienced counsel who concluded, after investing substantial effort in litigating this case, that the settlements are fair and in the best interests of the class.

The combined settlement amount of $2,125,000 is substantially smaller than the $9.75 million contributed by the other settling Defendants. This is particularly striking because Plaintiffs represented in their motion to preliminarily approve

their earlier settlements that those settlements were reasonable in part because the settling Defendants employed fewer class members than CRST and CRE. Critically, however, the earlier settlements were reached before the Court denied Plaintiffs' motions for class certification (and their subsequent motion to modify the Court's denial of class certification). These rulings, although subject to the possibility of being reversed on appeal, substantially decreased Defendants' potential liability in this action and precluded any recovery on the antitrust claims for class members other than the named Plaintiffs. Moreover, the Court carefully considered and prepared a tentative written opinion on the fully briefed motion for summary judgment, which was ultimately mooted by the parties' settlement and not issued. Defendants raised serious challenges to Plaintiffs' claims, and Plaintiffs reasonably recognized the risks involved in continuing to litigate. Considering the expense, uncertainty, and risk of continued litigation after the Court's denial of class certification, the settlement amount seems fair to the class members. The settlement agreements also provide valuable non-monetary benefits to the class, including agreements by CRE and CRST to stop some of their allegedly anticompetitive practices.

The requested deductions from the settlement funds for administrative fees, attorney's fees, costs, and incentive awards to the named Plaintiffs appear to be generally reasonable, although they will be reviewed further at the final approval stage when Plaintiffs' counsel provide more information about the hours spent litigating the case, the costs incurred, and the participation by the named Plaintiffs. "Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015). Plaintiffs anticipate that the total administrative costs will be approximately $400,000, to be divided evenly between the two settlements. This figure is notably higher than the $252,650 in administrative costs approved in connection with the earlier settlements in this case. Plaintiffs' counsel explained at the hearing that the settlement administrator underestimated the cost of processing and integrating the class members' information from multiple employers and therefore underbid its administration of the first round of settlements, which caused it to lose money. The settlement administrator will not be permitted to recoup its losses from the prior settlement administration by increasing its fees for administering these settlements. Before final approval, the Court will require further documentation, including a declaration under the penalty of perjury, of the administrative costs actually incurred in administering the CRE and CRST settlements. The declaration also shall state that the costs sought were incurred solely in administering the CRE and CRST settlements and that the administrator has made no attempt to recoup prior losses. Based on that evidence, the Court will allow reimbursement of the

reasonable costs of notice and settlement administration actually incurred, in an amount not to exceed $400,000.

The requested attorney's fees of no more than 25% of the monetary value of the settlement are within the realm of commonly approved fees. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases."). Litigation costs expended by class counsel are "routinely reimbursed" from class settlements, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013), and the Court already approved counsel's recovery of the lion's share of their costs from the earlier settlements. Plaintiffs represent that their remaining unreimbursed costs may total up to $500,000. Provided that Plaintiffs can establish that the expenses were properly incurred in furtherance of this litigation, reimbursement from the settlement funds appears to be reasonable.

Incentive awards to the named Plaintiffs are also appropriate in a reasonable amount to be determined by the Court. It is unlikely that the Court will approve the full $10,000 requested for each named Plaintiff in addition to the incentive awards already approved. Each named Plaintiff who seeks an award will be required before final approval to provide a declaration detailing his active participation and the services he provided to the class, specifically identifying his additional contributions after the Court approved his earlier incentive award.

Finally, the deduction of $37,500 to be paid to LWDA is required by Cal. Lab. Code § 2699(i) in light of the parties' designation of $50,000 of the settlement fund as a PAGA penalty. Although the designation of $50,000 as the PAGA portion of the settlement appears somewhat arbitrary, the Court is satisfied by Plaintiffs' explanation at the hearing that this sum reflects a reasonable compromise given the number of pay periods at issue and the reduced penalties per pay period that have been approved in other cases. Thus, the deduction of the LWDA's portion of the PAGA penalties seems reasonable and appropriate.

The parties have agreed that after the above deductions, 75% of the CRST settlement fund will be allocated to the Antitrust Subclass and 25% to the Labor Code Subclass. This division appears to be fair and reasonable considering that (1) all members of the CRST Labor Code Subclass are also members of the CRST Antitrust Subclass, (2) the Labor Code Subclass is much smaller than the Antitrust Subclass, (3) the Labor Code claims may have been released by the prior *Montoya* settlement, and (4) the Court denied class certification as to the underlying Labor

Code class claims, leaving the PAGA claim as the only avenue for class members to recover.

The parties agree that following the division of net settlement funds between the subclasses, all settlement funds for the CRE Settlement Class and the CRST Antitrust Subclass will be distributed to each class member who does not opt out based on the number of weeks worked for Defendants. The Court approved this allocation method for the prior settlements involving Plaintiffs' antitrust claims and likewise preliminarily finds it to be the most reasonable allocation method for the CRE Settlement Class and the CRST Antitrust Subclass. Although the parties initially agreed to an identical allocation of funds for the CRST Labor Code Subclass, the Court observed in its tentative opinion and at the hearing that this subclass claims to have been harmed not by wage suppression but rather by one-time fees charged in connection with the driver training school or for leaving employment with CRST before the end of the contract term. The parties agreed, both at the hearing and in their post-hearing written submission, Dkt. No. 705 at 3, that an equal distribution of the funds among the CRST Labor Code Subclass would be fair. Because the harm caused by the allegedly wrongful deductions appears to have been equally distributed among the subclass members, and equal division of funds will not create administrative difficulties, the Court finds that equal allocation of funds among the CRST Labor Code Subclass is fair and reasonable.

In sum, the settlement agreements appear to be fair, reasonable, and adequate, and the Court preliminarily approves the class settlements.

C.

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs propose that notice be provided by (1) mailing postcards in English and Spanish to the most current addresses available for each class member, (2) creating a settlement website that includes a long-form notice, and (3) emailing class members. These procedures were used in connection with the prior settlements and resulted in delivery of notices to most class members. *See* Dkt. No. 681 at 5. The Court finds that the proposed procedures are "reasonably calculated to provide notice to class members and inform class members of their options under the agreement[s]." *Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2020 WL 6887749, at *12 (E.D. Cal. Nov. 24, 2020).

Moreover, the Court has reviewed the proposed notices, which—with the revisions adopted in response to the Court's order for supplemental briefing and after the hearing, *see* Dkt. No. 705-2—appear to adequately advise the class of the terms of the settlement and their options for responding, including by opting out or objecting to the settlement.

The Court also approves Plaintiffs' requested 45-day notice period and approves their proposed schedule as modified below.

### III.

The Court GRANTS Plaintiffs' motion for preliminary approval of the class action settlements as follows:

1. The CRE Settlement Class, CRST Antitrust Subclass, and CRST Labor Code Subclass, as defined above, are preliminarily certified for settlement purposes.

2. Plaintiffs Curtis Markson, Mark McGeorge, Clois McClendon, and Eric Clark are preliminarily appointed as class representatives for the CRE Settlement Class and the CRST Antitrust Subclass. Plaintiffs Curtis Markson, Mark McGeorge, and Clois McClendon are preliminarily appointed as class representatives for the CRST Labor Code Subclass.

3. Mark M. Seltzer, Steven G. Sklaver, Matthew Berry, Krysta Kauble Pachman, and Ian M. Gore of Susman Godfrey L.L.P., William J. Gorham and Robert J. Wasserman of Mayall Hurley P.C., Craig J. Ackermann and Avi Kreitenberg of Ackermann & Tilajef, P.C., and Jonathan Melmed of Melmed Law Group, P.C. are preliminarily appointed as class counsel for the CRE Settlement Class, CRST Antitrust Subclass, and CRST Labor Code Subclass.

4. The Court preliminarily approves Plaintiffs' settlements with CRE and with CRST as fair, adequate, and reasonable, subject to any objections that may be raised at the final fairness hearing.

5. A hearing for final approval of the settlements is set for February 17, 2023 at 8:30 a.m.

6. The Court appoints JND Legal Administration[5] as the settlement administrator and approves Plaintiffs' proposed notice procedure. The Court approves the revised proposed notices filed at Dkt. No. 705-2. The settlement administrator shall disseminate the postcard, email, and long form notices in the manner described in the motion within 30 days after the entry of this Order.

IT IS SO ORDERED.

Date: October 31, 2022

Stanley Blumenfeld, Jr.
United States District Judge

---

[5] *See* Dkt. No. 705 at 3 (providing the correct name of the requested administrator).