UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS MARKSON et al., | Case No. 5:17-cv-01261-SB-SP |
| Plaintiffs, | |
| v. | ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DKT. NO. 714) AND PARTIALLY GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS (DKT. NO. 712) |
| CRST INTERNATIONAL, INC. et al., | |
| Defendants. | |

After more than five years of extensive litigation, the remaining parties in this action seek final approval of their class settlement and an award of attorneys' fees and costs.  Dkt. Nos. 712, 714.  No parties have filed oppositions, and no class members have objected.  The Court held a hearing on February 17, 2023, and now concludes that the settlement and the requested award of attorneys' fees and litigation costs should be approved.  The Court also concludes that the named Plaintiffs should receive further incentive awards, but in amounts less than they seek.

I.

The Court has previously described Plaintiffs' allegations and the case's history in depth, including in its order denying Plaintiffs' motions for class certification, Dkt. No. 561, and its order preliminarily approving the settlements at issue here, Dkt. No. 707.  Plaintiffs Curtis Markson, Mark McGeorge, Clois McClendon, and Eric Clark are commercial truck drivers who have worked for the remaining Defendants—CRST International, Inc. and CRST Expedited, Inc.

1

(together, CRST) and C.R. England, Inc. (CRE).  In May 2017, Markson and McGeorge filed this class action against CRST, alleging unlawful deductions from their pay.  Dkt. No. 1-1.  The litigation expanded over the years, and the operative Fourth Amended Complaint (4AC) alleges federal and state antitrust claims against CRST and seven other Defendants—CRE, Western Express, Schneider National Carriers, Inc., Southern Refrigerated Transport, Inc., Covenant Transport, Inc., Paschall Truck Lines, Inc., and Stevens Transport, Inc.  Dkt. No. 228.  Plaintiffs' antitrust claims assert that Defendants conspired to restrain competition among themselves by refusing to hire employees who remain "under contract" with another trucking company.  The 4AC also alleges state-law claims against CRST for (1) unreasonable liquidated damages clauses in violation of Cal. Civil Code § 1671; (2) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 16600 and 17200; (3) failure to indemnify necessary expenditures in violation of Cal. Labor Code § 2802; (4) failure to pay earned wages in violation of Cal. Labor Code §§ 201 and 202; and (5) civil penalties under the California Private Attorneys General Act, Cal. Lab. Code § 2699 (PAGA).  Dkt. No. 228.

In a series of settlements, Plaintiffs resolved their claims with all Defendants other than CRE and CRST in exchange for a total settlement fund of $9.75 million (from which administrative fees, attorneys' fees and expenses, and incentive awards for the named Plaintiffs were deducted), along with non-monetary relief. The Court approved those settlements and entered a final judgment as to the settling Defendants in August 2022.  Dkt. Nos. 681, 688.

After CRE and CRST moved for summary judgment but before the Court ruled on the motion, Plaintiffs reached separate class settlement agreements with CRE and CRST.  The Court conditionally certified a settlement class and two subclasses and preliminarily approved the settlements on October 31, 2022.  Dkt. No. 707.  Following the issuance of notice to the classes, Plaintiffs now move for final approval of the class settlements, Dkt. No. 714, and for an award of attorneys' fees, costs, and incentive awards, Dkt. No. 712.

II.

Plaintiffs seek certification of three classes and subclasses.  First, the CRE Settlement Class is defined as:

> [A]ll current and former drivers "Under Contract" . . . as motor vehicle carrier drivers with CRST International, Inc., CRST Expedited, Inc., C.R. England, Inc., Western Express, Inc., Schneider National Carriers, Inc., Southern Refrigerated Transport, Inc., Covenant Transport, Inc., Paschall Truck Lines, Inc., and Stevens Transport, Inc., at any time from May 15, 2013 through April 1, 2022.

Dkt. No. 694-2 at 21. "Under Contract" includes:

> individuals who executed an agreement with a Defendant in which the person agreed, and became obligated to work, for that Defendant for a specified period of time in return for a commercial driver's license education or other training provided by, funded by, or reimbursed by that Defendant and who was employed by that Defendant pursuant to that agreement at any time between May 15, 2013 and April 1, 2022.

*Id*. at 22.

The definition of the CRST Antitrust Subclass is identical to the definition of the CRE Settlement Class, and there are minor differences of phrasing in the definition of "Under Contract." *Id*. at 54–55.[1] As confirmed by counsel's explanation, the Court finds that these differences in phrasing are immaterial and merely account for variations in the Defendants' training programs and contracts with their drivers.

Finally, the CRST Labor Code Subclass is defined as:

> all persons who (1) signed a Pre-Employment Driver Training Agreement and/or Driver Employment Contract with the CRST Defendants, (2) participated in the CRST Defendants' Driver Training Program in California, and (3) were charged for their DOT physical,

---

[1] The settlement agreements identified April 1, 2022 as the end date for the CRE class period and April 6, 2022 as the end date for the CRST subclasses, but the parties later agreed to use April 1, 2022 as the end date for all classes, which the Court preliminarily approved. Dkt. No. 705 at 2–3; Dkt. No. 707.

DOT drug screening, administrative fees, and/or a contract fee after failing to complete their contractually-required 8- to 10-month employment term, at any time between May 15, 2013 through April [1], 2022.

*Id*. at 54.

Under the terms of the settlement agreements, CRE and CRST agree, in exchange for release of the claims against them, to make non-reversionary payments of $925,000 and $1,200,000, respectively.  Dkt. No. 694-2 at 18–49 (CRE Settlement Agreement), 51–80 (CRST Settlement Agreement).  From these gross settlement amounts, the parties ask the Court to approve the following deductions:  (1) payment to Plaintiffs' counsel of $531,250, representing one fourth of the settlement payments; (2) reimbursement of $473,629.87 of litigation costs incurred in this case; (3) $303,500 in administrative costs incurred in providing class notice and administering the settlement; (4) service awards of $10,000 ($5,000 from CRE and $5,000 from CRST) for each named Plaintiff; and (5) as to the CRST settlement only, a PAGA payment of $37,500 to the California Labor and Workforce Development Agency (LWDA).  If allowed in full, the deductions requested by Plaintiffs would leave $739,120.13 to distribute to the class members.

The first four deductions described above will be divided equally between the CRE and CRST settlement funds.  A $50,000 PAGA payment will be deducted only from the CRST fund, with $37,500 to be paid to the LWDA and the remaining $12,500 to be paid to the Labor Code Subclass.  The parties have agreed that after the above deductions, 75% of the remaining CRST settlement fund will be allocated to the Antitrust Subclass, and the other 25% will be allocated to the Labor Code Subclass.  All settlement funds for the CRE Settlement Class and the CRST Antitrust Subclass will be distributed to each class member who does not opt out in a pro rata amount based on the number of weeks worked for Defendants. The funds for the CRST Labor Code Subclass will be distributed equally among all members who do not opt out.

The settlement agreements also provide non-monetary relief to Plaintiffs, including that CRST and CRE (1) will not send "under contract" letters to other Defendants concerning certain class members, including those who were

involuntarily terminated; (2) will not sue any of the Defendants for hiring any class member based on his or her "under contract" status, and (3) will not refuse to hire based solely on "under contract" status a driver involuntarily terminated by another carrier, except where such hiring is prohibited by a valid non-compete obligation.

The settlement agreements provide that the settling class members in the CRE Settlement Class and the CRST Antitrust Subclass completely release and forever discharge "any and all claims, demands, actions, suits, and causes of action under any federal, state or local law of any jurisdiction in the United states" that arise out of or relate to the conduct alleged in the 4AC concerning the settling Defendants' participation in a conspiracy not to hire drivers "under contract" with another Defendant.   Dkt. No. 694-2 at 26–27, 58–59 of 96.  The CRST Labor Code Subclass similarly releases all claims related to the statutory violations alleged in this action.  *Id*. at 60–61 of 96.

III.

The Court conditionally certified the class and subclasses for settlement purposes and approved the parties' proposal for providing notice to class members, finding that the notices adequately advised class members of the terms of the settlement and their options for responding and that the proposed procedures were reasonably calculated to provide notice to class members.  Dkt. No. 707 at 9–10.  The class settlement administrator, JND Legal Administration LLC (JND), reviewed the records provided by Defendants, identified 122,664 unique class members, and mailed the Court-approved postcard notices to those members at 123,899 distinct addresses (including multiple addresses for some class members).  Dkt. No. 714-3 at 2–3.  12,587 notices were returned to JND as undeliverable, and 1,329 notices were forwarded to updated addresses by the postal service.  JND conducted further research on the undelivered notices and mailed new notices to the 7,327 class members for whom it was able to obtain updated address information.  *Id*. at 3.  JND also sent Court-approved email notices to 111,661 email addresses, of which 6,134 were undeliverable.  *Id*.  Finally, JND updated the dedicated website it had previously established for the prior settlements and maintained an updated case-specific toll-free telephone number to provide information to class members.  *Id*. at 3–4.  Since its update in November 2022, the website has been visited by at least 15,088 unique users, and the toll-free number

5

has received more than 3,200 calls.  *Id*. at 4.  The Court finds that this notice complies with the requirements of Rule 23 and due process.

Defendants provided notice of the settlements to the appropriate state and federal agencies on November 2 and 4, 2022, more than 90 days ago, satisfying the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.  Dkt. No. 714-2 at 4.

No class members have objected to the proposed settlements, and only 15 of the 122,664 class members—approximately 0.01%—have requested to be excluded from the settlement.  Dkt. No. 714-3 ¶ 15 (identifying 14 exclusion requests received by January 16, 2023); Dkt. No. 720-1 ¶¶ 5–6 (identifying one additional exclusion request received after January 16).

IV.

Plaintiffs seek final approval of the class settlements.  Final approval may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)).  The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. at 819 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  "Each factor does not necessarily apply to every class action settlement, and others may also be considered."  *Miller v. Wise Co.*, No. ED CV17-00616 JAK, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

When there is a settlement prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the

negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).  In addition to explicit collusion, a court should look for "more subtle signs" that class counsel have acted in their own self-interest or only in the interest of certain class members, such as:  (1) class counsel receiving a disproportionate amount of the settlement or being "amply rewarded" when class members receive no monetary relief; (2) payment of attorneys' fees separate and apart from class funds; or (3) an arrangement reverting any fees not awarded to the defendant rather than the class fund.  *Id*.

## A.

The *Hanlon* factors support a finding that the settlements are fair, reasonable, and adequate.

### 1.

To determine if a settlement is fair, the Court must balance the strengths and weaknesses of Plaintiffs' case against the risks and expenses of continued litigation.  *In re Mego*, 213 F.3d at 458–59.  No one formula governs the Court's determination of the likelihood of Plaintiffs' success, which the Ninth Circuit has described as "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, Plaintiffs produced evidence suggestive of agreements among at least some Defendants to not hire drivers under contract with other Defendants, which may support a finding of liability for antitrust violations under the federal Sherman Act and California's Cartwright Act.  However, the Court found that problems with Plaintiffs' damages model precluded class certification of Plaintiffs' antitrust claims against CRST and CRE.  Dkt. No. 561 at 24–26.  Thus, while some aspects of Plaintiffs' case are strong, they face serious obstacles to recovery, particularly as a class.  Defendants, of course, deny liability and have litigated this case vigorously.  Moreover, the Court carefully considered and prepared a tentative written opinion on the fully briefed motion for summary judgment, which was ultimately mooted by the parties' settlement and not issued.  Thus, the Court has

had opportunity to closely examine several aspects of the merits of Plaintiffs' claims.

As the Court explained in its preliminary approval order, the settlements with CRST and CRE, totaling $2,125,000, are substantially smaller than the $9.75 million contributed by the other settling Defendants, despite the fact that CRST and CRE employed more class members than the other Defendants. Critically, however, the earlier settlements were reached before the Court denied Plaintiffs' motions for class certification (and their subsequent motion to modify the Court's denial of class certification). These rulings, although subject to the possibility of being reversed on appeal, substantially decreased Defendants' potential liability in this action and precluded any recovery on the antitrust claims for class members other than the named Plaintiffs. Given the current posture of the case and the Court's assessment of the strength of Plaintiffs' claims, their settlement with CRST and CRE for more than $2 million, in addition to non-monetary relief, appears fair and reasonable. Thus, the strength of Plaintiffs' claims and the amount of the settlements support approval.

2.

"[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). This litigation, which has spanned nearly six years, has already been enormously expensive and protracted. As discussed more fully below, Plaintiffs' counsel claim to have collectively devoted well over 10,000 hours to this case. The class certification and summary judgment motions involved many thousands of pages of filings, and trial would likely be expensive and complicated. An immediate recovery for the class members is preferable to prolonged risk and expense of further litigation, weighing in favor of settlement.

3.

The Court denied Plaintiffs' motions to certify classes in connection with their claims—including their antitrust claims—against CRST and CRE. Dkt. No. 561. Plaintiffs are therefore unlikely to be able to maintain class action status

throughout trial in the absence of settlement.  This factor weighs heavily in favor of settlement.

4.

A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528.  Discovery in this case has been extensive.  Over the course of five years, Plaintiffs' counsel have served more than 300 requests for production of documents, requests for admission, and interrogatories; reviewed more than 330,000 pages of documents produced to them; participated in more than 30 depositions; and assisted in the preparation of six extensive expert reports.  Dkt. No. 714-2 at 6.  The motions practice in this case has been voluminous; the docket now contains well over 700 entries.  There is no question that counsel have sufficient familiarity with the facts of this case to make informed decisions about the realistic opportunities and risks of continued litigation, further supporting approval of the proposed settlement.

5.

Where class counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528.  Plaintiffs here are represented by experienced counsel at multiple law firms who, as noted above, are highly familiar with the facts of the case.  Counsel's unanimous agreement that the settlement is favorable to the class weighs in favor of approval.

6.

No government entity is a party to this action.  However, the relevant federal and state authorities were notified of the settlement consistent with the Class Action Fairness Act, and they have not raised any objections.  This factor therefore bears little weight but slightly favors approval of the proposed settlement.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to

a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").

7.

As discussed above, the class settlement administrator sent notifications by mail and email to the 122,664 class members identified, informing them of their rights to object or to opt out of the settlement, and thousands of people visited the settlement website and called the dedicated toll-free telephone number.  Dkt. No. 714-3.  Despite this substantial response, not a single class member objected to the settlement, and only 15—less than 0.02% of the class—have opted out.  *Id*.; Dkt. No. 720-1.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.  The complete absence of objections here supports approval.

B.

None of the factors identified by the Ninth Circuit in *Bluetooth* as warnings of collusion is present here.  The settlement provides substantial monetary payments to class members and does not disproportionately benefit class counsel.  Any award of attorneys' fees is taken from the class funds, not a separate arrangement.  And the settlement fund is non-reversionary.  Nor do the circumstances otherwise suggest collusion.  This was not a hasty settlement for the convenience of counsel.  To the contrary, counsel litigated this case vigorously for years before settling, and continued litigating even after the other Defendants all settled.  The settlement was reached with the assistance of an experienced mediator over multiple mediation sessions.  Dkt. No. 714-2 at 3.  The settlement provides a favorable outcome to the class, to which there are no objections.  Accordingly, the Court is satisfied that the settlement did not result from collusion between the negotiating parties.

\*       \*       \*

10

Based on its analysis of the factors for settlement final approval, the Court finds that the settlement is "fair, reasonable, and adequate" and not the product of collusion between the parties. *Lane*, 696 F.3d at 818. The Court therefore grants Plaintiffs' motion for final approval of the class action settlement.

V.

Having approved the settlements, the Court now turns to Plaintiffs' requests for attorney's fees, litigation costs, and service awards to be deducted from the settlement fund. Dkt. No. 712. The Court also considers the requested payment of $303,500 to JND for administering the class notice and settlement fund, which is raised in connection with Plaintiffs' motion for approval of the settlements.

A.

Although the settlement agreements contemplated a possible award of attorneys' fees of up to one third of the value of the settlement (including the non-monetary relief), Plaintiffs' counsel have limited their request to 25% of the $2,125,000 cash fund, or $531,250. Dkt. No. 712-1. As with other aspects of class settlements, courts have an obligation to scrutinize attorneys' fee agreements to ensure their fairness, adequacy, and reasonableness. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). In cases "where a settlement produces a common fund for the benefit of the entire class," courts have discretion to "employ either the lodestar method or the percentage-of-recovery method." *Bluetooth*, 654 F.3d at 942. Regardless of which method the court applies, "the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM, 2008 WL 8150856, at *8 (C.D. Cal. July 21, 2008) (cleaned up).

Under the percentage method, the court awards counsel a percentage of the common fund in attorneys' fees, for which the Ninth Circuit has established a 25% benchmark. *Hanlon*, 150 F.3d at 1029. The benchmark should be adjusted or replaced with a lodestar calculation when "special circumstances" justify a departure. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To determine whether the percentage requested is fair and reasonable, courts consider factors including the results achieved, the risk of litigation, the skill required, the quality of work performed, the contingent nature

11

of the fee and the financial burden, and the awards made in similar cases.  *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

The requested 25% fee is fair and appropriate in this case.  Plaintiffs' experienced counsel ably litigated this case, which involves a large class and difficult antitrust issues.  Working under a contingency fee arrangement, counsel spent thousands of hours on discovery and motions practice, filed scores of briefs and other documents over the course of five years, and ultimately obtained a favorable recovery for their clients, all with no guarantee of success.  The Court finds that a benchmark fee award of 25% is reasonable.

The requested fee is further supported by a cross-check against a rough estimate of the lodestar value.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Barbosa*, 297 F.R.D. at 451 (noting that a cross-check of the lodestar "can be performed with a less exhaustive cataloguing and review of counsel's hours").  The lodestar is calculated by multiplying the hours reasonably expended times a reasonable hourly rate based on the experience of counsel and the prevailing market rate in the community.  *Bluetooth*, 654 F.3d at 941.

Plaintiffs assert that their lodestar fee would be $7,009,883.32, representing a total lodestar of $9,447,383.32 incurred in this case, less the $2,437,500 already awarded by the Court in connection with the earlier settlements.  Dkt. No. 712-1 at 7.  Plaintiffs support this assertion with evidence of the hours worked and the rates typically charged by each of the four firms representing them.

Susman Godfrey L.L.P. claims 10,557.7 hours at hourly rates ranging from $275 for a paralegal to $2,000 for a partner, for a total lodestar of $7,112,875.  Dkt. No. 712-5 ¶¶ 6–7.  Ackerman & Tilajef, P.C. claims 625.75 hours at rates ranging from $125 to $919, for a total lodestar of $449,597.70.  Dkt. No. 713-2 ¶¶ 12, 15.  Mayall Hurley, P.C. claims 2,519.86 hours at rates ranging from $676 to $919, for a total lodestar of $1,780,077.02.  Dkt. No. 713-3 ¶ 19.  And Melmed Law Group, P.C. claims 183.7 hours at rates ranging from $208 to $733, for a total lodestar of $104,833.60.  Dkt. No. 713-1 ¶ 16.

The Court is not fully persuaded that every aspect of Plaintiffs' claimed lodestar figure is necessarily reasonable.  Nevertheless, it is unnecessary to calculate the precise reductions, if any, that may be appropriate to reach a reasonable lodestar because any modified lodestar figure would still exceed the 25% fee requested here.  This is true regardless of whether the Court compares the total fees awarded for all settlements ($2,968,750) to the total lodestar submitted by Plaintiffs ($9,447,383.32) or the additional fees sought here ($531,250) to the outstanding lodestar figure after adjustment for the prior fee award ($7,009,883.32).  Accordingly, the Court finds that the requested attorneys' fees of $531,250 are reasonable under the percentage method and supported by a lodestar cross-check.

## B.

In connection with the prior settlements, the Court allowed reimbursement of $2,716,510.45 in litigation expenses incurred by Plaintiffs' counsel to prosecute this case.  Dkt. No. 681 at 12–13.  The Court did not allow Plaintiffs to recover all their costs, excluding (1) all expenses incurred when CRST was the only Defendant, (2) expert fees and local counsel expenses paid in connection with Plaintiffs' non-antitrust claims against CRST, and (3) fees and expenses incurred after class settlement.  Now that the case is fully settled, Plaintiffs seek to recover their remaining unreimbursed litigation expenses.  The Court preliminarily approved reimbursement of up to $500,000 in costs (the maximum amount indicated by Plaintiffs), provided that Plaintiffs could establish that the expenses were properly incurred in furtherance of the litigation.  Dkt. No. 707 at 8.  Plaintiffs now seek reimbursement of $473,629.87 in litigation expenses.

Plaintiffs provide documentation showing the expenses incurred by each law firm, most of which were paid through a litigation fund to which all four firms contributed.  Dkt. Nos. 712-5 at 7 ($1,614,155.87 paid by Susman Godfrey), 713-1 at 21–22 ($511,318.71 paid by Melmed Law Group), 713-2 at 11–14 ($525,102.70 paid by Ackermann & Tilajef), 713-3 at 14–16 ($539,563.04 paid by Mayall Hurley).  The majority of these expenses, which total $3,190,140.32, were fees paid to experts, but the parties also document other expenses such as filing fees, travel expenses, costs of court, document storage, deposition transcripts, mediation, and research expenses.  After reimbursement of $2,716,510.45 in

connection with the earlier settlements, the remaining expenses total $473,629.87—the amount Plaintiffs now seek.

Courts approving class settlements regularly allow reimbursement of litigation expenses of the type sought here. *E.g.*, *Barbosa*, 297 F.R.D. at 454 (noting that travel fees, mediation fees, photocopies, and delivery and mail charges are "routinely reimbursed"). No class member has objected to the requested cost award, and the Court finds that the requested expenses were incurred for the benefit of the class. Reimbursing Plaintiffs' counsel for the out-of-pocket costs counsel expended on behalf of the class to obtain the class settlements is reasonable and appropriate under the facts and circumstances of this case. Accordingly, the Court awards Plaintiffs' counsel reimbursement of their remaining litigation costs in the amount of $473,629.87, to be paid from the settlement funds.

## C.

Finally, Plaintiffs request incentive awards of $10,000 ($5,000 from CRST and $5,000 from CRE) for each named Plaintiff. Incentive awards are discretionary and meant to compensate class representatives "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–67 (N.D. Cal. 2015). Several factors may help guide the Court's determination of whether Plaintiffs' requested award is reasonable:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Id.* at 266 (quoting *Covillo v. Specialtys Cafe*, No. C-11-00594, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014)).

In connection with the prior settlements, each named Plaintiff sought an incentive award of $25,000, claiming to have spent at least 200 hours on this case (250 hours for Markson and McGeorge).  The Court determined that Plaintiffs' years-long participation in this case justified above-average incentive awards, but not at the levels sought by Plaintiffs.  Considering the time spent by each named Plaintiff, the nature and duration of the litigation, and the risks arising from the named Plaintiffs' participation, the Court granted the following incentive awards: $15,000 for Curtis Markson; $13,500 for Mark McGeorge; $12,000 for Clois McClendon; and $12,000 for Eric Clark.  Dkt. No. 681 at 13–14.

In its order preliminarily approving the CRST and CRE settlements, the Court observed that it was unlikely to approve the full $10,000 requested by each named Plaintiff in addition to the incentive awards already approved, and ordered that "[e]ach named Plaintiff who seeks an award will be required before final approval to provide a declaration detailing his active participation and the services he provided to the class, specifically identifying his additional contributions after the Court approved his earlier incentive award."  Dkt. No. 707 at 8.  All four Plaintiffs have submitted declarations estimating that they have spent an additional 25 hours working on this case since the submission of their prior declarations and expressing concern about the possible impact of their role in this case on future employment opportunities.  Dkt. Nos. 712-6, 712-7, 712-8, 712-9.

The Court has already awarded each named Plaintiff an incentive award that is more than double the presumptively reasonable amount.  Those awards accounted for Plaintiffs' extensive participation in this protracted litigation and for any risk to their job prospects as a result of their involvement as named Plaintiffs. Plaintiffs have not produced evidence of any marginal harm to their employment opportunities as a result of remaining as class representatives for the additional months since the prior settlements.  Moreover, spending an additional 25 hours on this case (approximately 10–12% of the time they previously stated they had devoted to this case) does not justify a further award of $10,000 each.  The Court finds that the named Plaintiffs have already been compensated for most of their contributions to this case through the earlier incentive awards.  To compensate them for the additional time spent in the final stage of this case, the Court determines that a further incentive award of $1,500 ($750 from CRST and $750 from CRE) for each named Plaintiff is reasonable and appropriate.

D.

"Courts regularly award administrative costs associated with providing notice to the class." *Bellinghausen*, 306 F.R.D. at 266. At the preliminary approval stage, the Court expressed concern about Plaintiffs' estimate that the administrative costs of the settlement, including notice and distribution of funds, would be approximately $400,000:

> This figure is notably higher than the $252,650 in administrative costs approved in connection with the earlier settlements in this case. Plaintiffs' counsel explained at the hearing that the settlement administrator underestimated the cost of processing and integrating the class members' information from multiple employers and therefore underbid its administration of the first round of settlements, which caused it to lose money. The settlement administrator will not be permitted to recoup its losses from the prior settlement administration by increasing its fees for administering these settlements. Before final approval, the Court will require further documentation, including a declaration under the penalty of perjury, of the administrative costs actually incurred in administering the CRE and CRST settlements. The declaration also shall state that the costs sought were incurred solely in administering the CRE and CRST settlements and that the administrator has made no attempt to recoup prior losses. Based on that evidence, the Court will allow reimbursement of the reasonable costs of notice and settlement administration actually incurred, in an amount not to exceed $400,000.

Dkt. No. 707 at 7–8.

Plaintiffs now request that the Court approve payment of $303,500 from the settlement funds to JND, the settlement administrator. They attach a sworn declaration by JND's director, Kimberly Ness, identifying $83,873.52 in expenses actually incurred to date and identifying total expenses of $303,500 that Ness anticipates will be incurred through completion of the settlement administration. Dkt. No. 714-3 ¶¶ 20–21. The declaration states that these fees and expenses were or will be incurred solely in administering the CRE and CRST settlements and that JND has not attempted to recoup any prior losses. *Id.* ¶ 22. The itemized list of

16

expenses includes some readily ascertainable costs; for example, JND has already spent $46,883.87 on postage and expects to spend a total of $70,000.  Other anticipated costs are more nebulous:  $120,000 to "Distribute Benefits (including undeliverable follow up)," $52,000 for "Project Management," and $15,000 for "Expenses."  *Id.* ¶ 21.

On this record, the Court will credit JND's sworn assertion that it is not seeking to recoup its losses and will allow the requested costs.  In finding the costs reasonable, the Court considers that (1) the class is relatively large, consisting of more than 122,000 members, (2) JND appears to have ably discharged its duties thus far, (3) JND's requested expenses are nearly $100,000 less than the estimate presented by Plaintiffs at the preliminary approval stage, (4) in light of Plaintiffs' representation that JND took a loss on the prior settlement administration, it is not apparent that another vendor would be able to complete the settlement administration for less than the amount JND seeks, and (5) no class member has objected to the amount of fees sought.  Accordingly, the Court authorizes payment to JND of its reasonable costs of administering the settlement in the amount of $303,500, to be paid in equal parts from the CRST and CRE settlement funds.

VI.

Plaintiffs' unopposed motion for final approval of the class settlement is GRANTED, and the settlement agreements are FINALLY APPROVED.  For the reasons stated in its October 31, 2022 preliminary certification order, the Court (1) certifies for settlement purposes the CRE Settlement Class, CRST Antitrust Subclass, and CRST Labor Code Subclass, as defined above; (2) appoints Plaintiffs Curtis Markson, Mark McGeorge, Clois McClendon, and Eric Clark as class representatives for the CRE Settlement Class and the CRST Antitrust Subclass; (3) appoints Plaintiffs Curtis Markson, Mark McGeorge, and Clois McClendon as class representatives for the CRST Labor Code Subclass; and (4) appoints Mark M. Seltzer, Steven G. Sklaver, Matthew Berry, Krysta Kauble Pachman, and Ian M. Gore of Susman Godfrey L.L.P., William J. Gorham and Robert J. Wasserman of Mayall Hurley P.C., Craig J. Ackermann and Avi Kreitenberg of Ackermann & Tilajef, P.C., and Jonathan Melmed of Melmed Law Group, P.C. as class counsel. Plaintiffs' claims against Defendants CRST International, Inc., CRST Expedited, Inc., and C.R. England, Inc. are DISMISSED with prejudice.

Plaintiffs' unopposed motion for attorneys' fees, litigation costs, and incentive awards is GRANTED in part.  The Court awards $531,250 in attorneys' fees and $473,629.87 in litigation costs to Plaintiffs' counsel and a $1,500 incentive payment to each named Plaintiff.

The parties within three business days after entry of this Order shall submit an agreed proposed final judgment.

Date: February 17, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge